RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA  2020 FEB 12 P 3: 46
NORTHERN DIVISION

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

JONATHAN SINGLETON, RICKY
VICKERY, and MICKI HOLMES,

  Plaintiffs,

v.

CITY OF MONTGOMERY, ALABAMA,
DERRICK CUNNINGHAM, in his
official capacity as Sheriff of Montgomery
County, and HAL TAYLOR, in his official
capacity as Secretary of the Alabama Law
Enforcement Agency,

  Defendants.

Case No. 2:20-cv-99

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I.  PRELIMINARY STATEMENT**

1.  The City and County of Montgomery and State of Alabama are violating fundamental principles of the First Amendment by prohibiting needy individuals from asking for donations in public spaces. Through ongoing enforcement of state statutes prohibiting begging, Ala. Code § 13A-11-9(a)(1) (the "Begging Statute"), and solicitation on highways, Ala. Code § 32-5A-216(b) (the "Pedestrian Solicitation Statute") (collectively, the "Statutes"), the City, County, and State have criminalized the speech of a socially disfavored group: people experiencing homelessness who panhandle.

2.  Plaintiffs Jonathan Singleton, Ricky Vickery, and Micki Holmes are residents of Montgomery experiencing homelessness. Under the Statutes, they face arrest, fines, and incarceration for asking their fellow community members for assistance. Despite the ongoing risk

1

of criminal prosecution, Plaintiffs will continue to panhandle to subsist.

3. The injuries Plaintiffs face are typical. Since July 2018, law enforcement have issued more than 400 citations to Montgomery residents for violating the Begging Statute and Pedestrian Solicitation Statute. Law enforcement officers continue to threaten Plaintiffs with arrest and jail for panhandling and to tell them that it is illegal to be homeless in Montgomery.

4. Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 on behalf of themselves and all others similarly situated for violating their First Amendment rights under the United States Constitution. They challenge the constitutional validity of the Statutes on their face. They seek (1) a declaration that the Statutes violate the First Amendment by restricting protected speech—charitable solicitation—without sufficient justification and (2) injunctive relief preventing Defendants from enforcing the Statutes.

## II. JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3). This case arises under the First and Fourteenth Amendments to the United States Constitution and is actionable under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are located within this District and Division and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## III. PARTIES

### A. **Plaintiffs**

7. Plaintiff Jonathan Singleton is a resident of Montgomery, Alabama.

8. Plaintiff Ricky Vickery is a resident of Montgomery, Alabama.

9. Plaintiff Micki Holmes is a resident of Montgomery, Alabama.

### B. <u>Defendants</u>

10. Defendant City of Montgomery (the "City") is a municipal corporation located within Montgomery County, Alabama, and organized under the laws of the State of Alabama.

11. Defendant Derrick Cunningham is Sheriff of Montgomery County ("the County Sheriff"). He is sued in his official capacity. The County Sheriff has jurisdiction to enforce the Statutes within Montgomery County.[1]

12. Defendant Hal Taylor is Secretary of the Alabama Law Enforcement Agency ("ALEA"). He is sued in his official capacity. ALEA has jurisdiction to enforce the Statutes statewide, including within Montgomery.[2]

## IV. STATEMENT OF FACTS

### A. <u>Plaintiffs Panhandle to Meet Basic Needs.</u>

13. In 2019, at least 3,261 residents, including 236 families and 292 veterans, experienced homelessness in Alabama each night.[3] Over 14,000 Alabama public school students experienced homelessness during the 2016–2017 school year.[4] And at least 369 people were homeless on any given night in 2018 in Montgomery County.[5]

14. Many of these individuals suffer from chronic and untreated health conditions, including physical and mental illness and addiction, that make securing stable housing and

---

[1] *See* Ala. Code § 36-22-3(a)(4); *see also* Ala. Op. Att'y Gen. No. 98-00188, 1998 WL 35869489 (July 28, 1998) ("[A] sheriff's duty to ferret out crime extends equally across the county to include areas within the city limits or police jurisdiction. . . .").

[2] *See* Ala. Code § 32-2-22.

[3] Alabama Homelessness Statistics, United States Interagency Council on Homelessness (Jan. 2019), https://www.usich.gov/homelessness-statistics/al/.

[4] *Id.*

[5] Alabama, National Alliance to End Homelessness (2018), https://endhomelessness.org/homelessness-in-america/homelessness-statistics/state-of-homelessness-report/alabama/.

3

employment exceedingly challenging. While some people may find emergency or transitional housing in area shelters, others feel unsafe sleeping at the facilities or do not qualify for beds or supportive services.

15. Plaintiffs Jonathan Singleton, Micki Holmes, and Ricky Vickery are three homeless residents of Montgomery County who panhandle in the City to meet basic needs. Mr. Singleton sleeps under a bridge or pays $10 to sleep on a person's porch. He suffers from multiple serious medical conditions, including kidney failure, and has been unable to maintain steady work. Mr. Vickery panhandles to have enough money to eat and has found it difficult to access homeless services in the City. Mr. Holmes began panhandling to support his wife, who suffers from brain damage and seizures, after they were evicted from a motel.

16. Despite their fears of being prosecuted for panhandling, all three Plaintiffs continue to panhandle because they have no other way to subsist.

**B.    State Laws Criminalize Panhandling.**

17. The Begging Statute states that "[a] person commits the crime of loitering if he . . . [l]oiters, remains, or wanders about in a public place for the purpose of begging."

18. The Pedestrian Solicitation Statute states that "[n]o person shall stand on a highway for the purpose of soliciting employment, business, or contributions from the occupant of any vehicle, nor for the purpose of distributing any article, unless otherwise authorized by official permit of the governing body of the city or county having jurisdiction over the highway."[6]

19. Under Alabama law, the term "highway" has the same definition as

---

[6] In practice, neither the City nor County of Montgomery has established a permitting process. *See* Declaration of Symone Jackson. Additionally, the City and County have no authority to issue permits for solicitation on state highways, which are outside their jurisdiction. *See* Ala. Op. Att'y Gen. No. 82-00014, 1981 WL 726044 (Oct. 20, 1981).

4

"street," *compare* Ala. Code § 32-1-1.1(24) *with* § 32-1-1.1(74), and encompasses the "entire width between the boundary lines" of a street, including the shoulder, berm and median areas. Op. Att'y Gen. No. 95-00308, 1995 WL 18097025 (Aug. 29, 1995).

20. The City has incorporated both Statutes into its municipal code, thereby enabling the City to concurrently enforce the Statutes alongside ALEA and the County Sheriff. *See* Montgomery, Ala., Code § 1-9(a)-(b).

21. The City punishes violations of the Statutes by a fine of up to $500 and incarceration or hard labor for up to six months. *Id.* §§ 1-9(d), 1-6(c).

22. From July 2018 through December 2020, the Montgomery Police Department issued 35 citations pursuant to the Begging Statute and 394 citations pursuant to the Pedestrian Solicitation Statute. Police officers have warned people who panhandle, including Plaintiffs, that they will be jailed if they continue to panhandle anywhere within city limits. Consequently, Plaintiffs fear citation and arrest under the Statutes.

23. On multiple occasions, Plaintiffs' counsel expressed concerns to the City about the constitutionality of the Statutes as well as an additional City ordinance outlawing panhandling.[7] The City repealed the panhandling ordinance in December 2019 but has not removed the Statutes from its municipal code.

24. ALEA and the County Sheriff have jurisdiction to enforce the Statutes in Montgomery. *See* Ala. Code §§ 32-2-22, 36-22-3(a)(4).

### C. Defendants Can Satisfy Any Legitimate Interest Without Criminalizing Panhandling.

---

[7] In July 2019, the City of Montgomery passed Ordinance No. 24-2019 to criminalize all panhandling in the City and impose a fine and mandatory jail time for all violations.

25. The Begging Statute and Pedestrian Solicitation Statute are silent as to any purpose motivating their restrictions on speech, and there is no legislative history to explain the Legislature's goals in passing the Statutes.[8]

26. However, other state and municipal laws are available to advance any conceivable state interest in a more targeted manner without restricting an individual's ability to panhandle. For example, Alabama law prohibits disorderly conduct, Ala. Code § 13A-11-7; harassment, Ala. Code § 13A-11-8; occupying the roadways in a dangerous manner, Ala. Code §§ 32-5A-212, 32-5A-215, Montgomery, Ala. Code §§ 27-10, 18-205; disregarding pedestrian traffic signals, Ala. Code § 32-5A-210; and littering, Ala. Code § 13A-7-29(a)(1), Montgomery, Ala. Code § 26-3. Defendants have provided no explanation for why these laws are insufficient to address any perceived problems associated with panhandling.

27. Rather than advancing public safety, criminalizing panhandling heightens barriers to exiting homelessness. A conviction for panhandling may result in unaffordable fines and fees, the loss of liberty through incarceration, and a criminal record—all of which are obstacles to attaining housing and economic security.

**D.      Plaintiffs Face Imminent Risk of Prosecution Under the Statutes.**

28. **Plaintiff Jonathan Singleton** is a 44-year-old resident of Montgomery who has been homeless and panhandling in the City since 2014. He slept under one of the City's bridges until recently, when an officer told him that it is illegal to be homeless in the City and ordered him to gather his belongings and leave his encampment under the bridge. Since then, he has frequently

---

[8] "Alabama does not create or maintain typical legislative-history material such as committee reports and records of hearings." *State v. $223,405.86*, 203 So. 3d 816, 832 n.8 (Ala. 2016). The Commentary to the Begging Statute simply notes that the language was intended to punish begging, but only certain types of begging—not "that which is done by those who have suffered some misfortune which necessitates their selling pencils, apples or the like which the 'customer' really isn't supposed to accept after payment." Ala. Code § 13A-11-9(a)(1). The Solicitation Statute has no relevant commentary.

moved his encampment or paid $10 a night to sleep on a person's porch.

29. Mr. Singleton is caught in the vicious circle of homelessness. Without stable housing, he is unable to maintain employment, and without a job, he cannot afford to find housing.

30. Mr. Singleton's housing and economic instability exacerbate his medical conditions, which include kidney failure, chronic pancreatitis, and uncontrolled diabetes. His homeless status and inability to afford health insurance make it difficult to access ongoing medical care and treatment. As a result, his illnesses have gone untreated, leading to severe weight loss and multiple hospitalizations.

31. Mr. Singleton is aware of few places in Montgomery where he and others experiencing homelessness can go to access food, showers, and other resources.

32. Mr. Singleton sees panhandling as necessary to his survival, despite ongoing threats, harassment, assaults, citations, and arrests by the police.

33. He has been arrested or cited six times for panhandling under the Pedestrian Solicitation Statute.

34. For example, on September 30, 2019, Mr. Singleton was standing in the grass near the Ann Street highway exit with a sign that read: "HOMELESS. Today it is me, tomorrow it could be you." A police officer told him to rip up his sign and ticketed him for panhandling under Ala. Code § 32-5A-216(b). The officer then warned him that he would be jailed if he panhandled again in the future.

35. Officers have told Mr. Singleton multiple times since then that it is illegal to panhandle or to be homeless in Montgomery.

36. Mr. Singleton feels lonely, scared, and anxious when police officers approach him. Although he fears being arrested, fined, and jailed for panhandling, he will continue to ask people

for donations because he must do so in order to survive.

37.     **Plaintiff Ricky Vickery** is a 56-year-old resident of Montgomery who has been homeless and panhandling in the City since July 2018.

38.     Mr. Vickery panhandles because he needs help: he does not have access to stable shelter and has found few institutional sources of support for people experiencing homelessness in the City.

39.     When he panhandles, he usually holds a sign saying, "homeless and hungry." Although sometimes people are generous, they are often cruel. They call him names, accuse him of lying about being homeless, ridicule and taunt him, and call the police.

40.     People often degrade him and treat him as sub-human—waving handfuls of money at him or pretending to eat a sandwich before rolling up their car windows and driving way.

41.     Mr. Vickery has been ticketed or jailed for panhandling fourteen times under the Pedestrian Solicitation Statute and once under the Begging Statute.

42.     Although Mr. Vickery feels scared when the police approach him and is concerned about being arrested for panhandling in the future, he will continue to panhandle to get the help he needs.

43.     **Plaintiff Micki Holmes** is a 38-year-old resident of Montgomery who has been homeless and panhandling in the City since December 2018.

44.     On Christmas Eve in 2018, Mr. Holmes and his wife were evicted from the motel where they had been living. That was the first day that Mr. Holmes panhandled.

45.     Mr. Holmes panhandles most days now because he and his wife are desperate for help. His wife suffers from brain damage and seizures from growing up in a neighborhood contaminated with mold and depends on Mr. Holmes to protect her and manage her illnesses.

46.     When he panhandles, he usually holds a sign that reads, "homeless."

47.     Mr. Holmes has been ticketed once for panhandling under the Pedestrian Solicitation Statute and threatened with tickets or arrest multiple times. On some occasions, police officers have confiscated his sign and ordered him to walk away.

48.     Mr. Holmes is concerned about being arrested and jailed for panhandling, especially because in his absence, his wife will have no way to call for medical attention when she suffers seizures. Nevertheless, he will continue to solicit charity while he and his wife are homeless because they need the community's help.

49.     Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs herein alleged. Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts, policies, and practices unless they are granted the relief prayed for herein.

## V.     CLASS ALLEGATIONS

50.     Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) related to their Claims for prospective injunctive and declaratory relief. This Class is defined as: All individuals who will in the future (1) stand on a public street for the purpose of soliciting employment, business, or contributions from the occupant of a vehicle, or (2) loiter, remain, or wander in a public place for the purpose of begging.

51.     A class action is the only practicable means by which Plaintiffs and unknown members of the Class can challenge the Pedestrian Solicitation Statute and Begging Statute.

52.     As set forth below, this action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a). This action also satisfies Federal Rule of Civil Procedure 23(b)(2).

53. *Numerosity*: The exact size of the Class is unknown by Plaintiffs, but includes numerous individuals, including unknown future class members, thereby making joinder impracticable. According to recent estimates, there are over 3,200 Alabama residents experiencing homelessness each night, with over 350 per night in Montgomery County alone. Given the difficulty of maintaining stable employment while experiencing homelessness, many of these individuals will at some point request donations from pedestrians and motorists in order to meet basic needs, putting them at risk of prosecution under the Statutes. Indeed, in the City alone, over 100 individuals have been charged with violating the Statutes since July 2018. The county- and state-wide numbers are undoubtedly greater.

54. Members of the proposed Class, such as Plaintiffs, are also geographically diverse, and lack financial resources to bring an independent action or to be joined in this action. Putative members are exposed to prosecution under the Statutes precisely because they need financial assistance and express this need to others; thus, they are unlikely to be able to afford counsel to bring their own separate action against Defendants.

55. *Commonality*: All persons comprising the Class are equally subject to the Pedestrian Solicitation Statute or Begging Statute, which authorize ALEA, the County Sheriff, and the City to prosecute individuals for exercising their First Amendment right to engage in charitable solicitation.

56. Plaintiffs raise claims based on questions of law and fact that are common to, and typical of, the putative class members. Common questions of fact and law include:

    a. Whether Defendants prosecute or threaten to prosecute individuals for standing on public streets and soliciting financial assistance;

10

    b.    Whether the Pedestrian Solicitation Statute authorizes Defendants to prosecute individuals for standing on public streets and soliciting financial assistance;

    c.    Whether the Pedestrian Solicitation Statute violates the First Amendment by authorizing Defendants to prosecute individuals for standing on public streets and soliciting financial assistance;

    d.    Whether the Begging Statute authorizes Defendants to prosecute individuals for requesting financial assistance in public places;

    e.    Whether the Begging Statute violates the First Amendment by authorizing Defendants to prosecute individuals for requesting financial assistance in public places; and

    f.    Whether injunctive and declaratory relief are appropriate and if so, what the terms of such relief should be.

57.    The relief sought is common to all members of the Class. Plaintiffs seek relief declaring the Statutes unconstitutional. They additionally seek an injunction preventing Defendants from enforcing the Statutes.

58.    ***Typicality***: The claims of Plaintiffs are typical of the claims of the proposed Class as a whole. Plaintiffs and the putative Class members are suffering the same irreparable injury of the direct penalization of their First Amendment rights, and this injury will continue unless the Statutes are declared unconstitutional and enjoined.

59.    Because Plaintiffs and the proposed Class challenge the same unconstitutional Statutes, Defendants will likely assert similar defenses against Plaintiffs and proposed Class members. Moreover, the answer to whether the Statutes are unconstitutional will determine the

success of Plaintiffs' and every other proposed Class member's claims: if Plaintiffs succeed in their claims, that ruling will likewise benefit every other member of the proposed Class.

60. *Adequacy*: Plaintiffs will fairly and adequately represent the interests of the proposed Class they seek to represent.

61. Plaintiffs have no interests separate from, or in conflict with, those of the proposed Class they seek to represent and seek no relief other than the declaratory and injunctive relief sought on behalf of the entire proposed Class. Counsel know of no conflict among members of the proposed Class.

62. *Rule 23(b)(2)*: Class action status under Rule 23(b)(2) is appropriate because Defendants have acted or failed and/or refused to act on grounds that generally apply to the proposed Class, such that preliminary and final injunctive and declaratory relief is appropriate and necessary with respect to each member of the Class. Specifically, Defendants criminalize protected speech based on the message expressed in violation of the First Amendment.

63. Accordingly, (a) a declaration that the Statutes violate the First Amendment of the U.S. Constitution; and (b) an injunction preventing Defendants from enforcing the Statutes would benefit every member of the proposed Class.

64. *Rule 23(g)*: Plaintiffs respectfully request that the undersigned be appointed as Class Counsel. The undersigned attorneys from the Southern Poverty Law Center, National Law Center on Homelessness and Poverty, and American Civil Liberties Union of Alabama have experience in class-action litigation involving complex civil rights matters in federal court and knowledge of the relevant constitutional law. Counsel also have the resources, expertise, and experience to prosecute this action.

**VI. CLAIMS FOR RELIEF**

## COUNT ONE: VIOLATION OF FIRST AMENDMENT, AS INCORPORATED BY THE FOURTEENTH AMENDMENT, UNDER 42 U.S.C. § 1983
### (Pedestrian Solicitation Statute)

65. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66. Plaintiffs bring this claim on behalf of themselves and the proposed Class they seek to represent.

67. The First Amendment to the U.S. Constitution limits government regulation of protected speech.

68. Charitable solicitation and begging are within the protection of the First Amendment.

69. Content-based restrictions of speech, or those that prohibit speech based on the subject matter discussed or message expressed, are presumptively violative of the First Amendment. To survive constitutional scrutiny, a content-based restriction must be narrowly tailored to further a compelling government interest.

70. On its face, the Pedestrian Solicitation Statute is an impermissible content-based restriction on speech. The Statute singles out charitable solicitation as a subject matter and requires law enforcement officers to examine the content of a person's speech to determine whether she has violated the statute. It seeks to prohibit charitable solicitation at all times and in traditional public fora.

71. The Statute is not narrowly tailored to meet any interest Defendants might assert.

72. Even if the Pedestrian Solicitation Statute could be construed as content-neutral, the statute is not narrowly drawn and does not provide ample alternative times, locations, or methods for the prohibited speech.

73. The Statute is also an unconstitutional prior restraint on speech, as it bars lawful speech and expressive activity in traditional public fora and grants to public officials the power to deny use of a forum in advance of actual expression through a permitting scheme. The Statute does not contain narrow, objective, and definite standards to guide any permitting scheme and lacks procedural safeguards against unlawful infringement of protected speech.

74. In practice, the City and County have not adopted a permitting process. Furthermore, the City and County have no authority to establish a permitting process for state highways, which do not fall within their jurisdiction. Plaintiffs therefore have no way to ask for permission to engage in constitutionally protected expression. The Statute is being applied to Plaintiffs as a blanket prohibition on their ability to panhandle.

75. Accordingly, enforcement of § 32-5A-216(b) infringes on Plaintiffs' rights to freedom of speech and expression secured by the First Amendment to the U.S. Constitution.

76. The violations of Plaintiffs' rights under the First Amendment are redressable via 42 U.S.C. § 1983.

### COUNT TWO: VIOLATION OF FIRST AMENDMENT, AS INCORPORATED BY THE FOURTEENTH AMENDMENT, UNDER 42 U.S.C. § 1983
**(Begging Statute)**

77. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

78. Plaintiffs bring this claim on behalf of themselves and the proposed Class they seek to represent.

79. The First Amendment to the U.S. Constitution limits government regulation of protected speech. Charitable solicitation and begging are within the protection of the First Amendment.

80. Content-based restrictions of speech, or those that prohibit speech based on the subject matter discussed or message expressed, are presumptively violative of the First Amendment. To survive constitutional scrutiny, a content-based restriction must be narrowly tailored to further a compelling government interest.

81. The Begging Statute prohibits begging for financial assistance in any public place.

82. On its face, the Begging Statute is an impermissible content-based restriction on speech. The Statute singles out charitable solicitation as a subject matter and requires law enforcement officers to examine the content of a person's speech to determine whether she has violated the statute. It seeks to prohibit charitable solicitation at all times and in traditional public fora.

83. The Statute is not narrowly tailored to meet any interest Defendants might assert.

84. Even if the Begging Statute could be construed as content-neutral, it is not narrowly drawn and does not provide ample alternative times, locations, or methods for the prohibited speech.

85. Accordingly, enforcement of the Begging Statute infringes on Plaintiffs' rights to freedom of speech and expression secured by the First Amendment to the U.S. Constitution.

86. The violations of Plaintiffs' rights under the First Amendment are redressable via 42 U.S.C. § 1983.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

a. Assume jurisdiction over this action;

b. Certify a Class under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure represented by Plaintiffs Mr. Singleton, Mr. Vickery, and Mr. Holmes;

c.   A declaration that Ala. Code §§ 32-5A-216(b) and 13A-11-9(a)(1) violate the First Amendment of the U.S. Constitution;

d.   Injunctive relief enjoining Defendants from enforcing Ala. Code §§ 32-5A-216(b) and 13A-11-9(a)(1).

e.   Award Plaintiffs costs, including attorney fees; and

f.   Grant such other relief as the Court deems just and appropriate.

Dated: February 12, 2020.

Respectfully submitted,

Ellen Degnan
*On Behalf of Plaintiffs' Counsel*

Ellen Degnan (ASB-3244-I12V)
Micah West (ASB-1842-J82F)
Sara Zampierin (ASB-1695-S34H)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
T: (334) 956-8200
F: (334) 956-8481
E: ellen.degnan@splcenter.org
E: micah.west@splcenter.org
E: sara.zampierin@splcenter.org

Clara Potter* (La. Bar No. 38377)
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
T: (504) 486-8982
F: (504) 486-8947
E: clara.potter@splcenter.org

Randall Marshall (ASB-3023-A56M)
ACLU FOUNDATION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106
T: (334) 265-2754

E: rmarshall@aclualabama.org

Tristia Bauman* (D.C. Bar No. 1016342)
NATIONAL LAW CENTER ON
HOMELESSNESS & POVERTY
2000 M Street NW, Suite 210
Washington, D.C., 20036
T: (202) 638-2535 x. 102
E: tbauman@nlchp.org

*applications for pro hac vice forthcoming*

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that arrangements have been made to deliver a true and correct copy of the foregoing by hand delivery to the following parties, at the below addresses:

Hal Taylor, Secretary of Alabama Law Enforcement Agency
301 South Ripley Street, Suite 3000
Montgomery, AL 36104

Derrick Cunningham
Montgomery County Sheriff's Office
115 South Perry Street
Montgomery, AL 36103

Steve Marshall
State of Alabama Attorney General's Office
501 Washington Avenue
Montgomery, AL 36104

Brenda Gale Blalock
City Clerk
103 North Perry Street
Montgomery, AL 36104

Formal proof of service will be filed with the Court when completed.

DATED this February 12, 2020.

*Ellen Degnan*
Ellen Degnan