## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
#### NORTHERN DIVISION

2020 FEB 12 P 3: 47

DEBRA P. HACKETT, CLK
.S. DISTRICT COURT
MIDLE DISTRICT ALA

JONATHAN SINGLETON, RICKY
VICKERY, AND MICKI HOLMES,

    Plaintiffs,

v.

CITY OF MONTGOMERY, ALABAMA,
DERRICK CUNNINGHAM, in his
official capacity as Sheriff for
Montgomery County, and HAL TAYLOR,
in his official capacity as Secretary of the
Alabama Law Enforcement Agency,

    Defendants.

Case No. 2:20-cv-99

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I.   Introduction ...................................................................................................................1

II.  Factual Background........................................................................................................2

   a.   Alabama and Montgomery Have a Significant Homeless Population. ...............................2

   b.   Defendants Enforce Statutes That Criminalize Panhandling................................................3

   c.   Despite Repealing a City Panhandling Ban, the City Continues to Enforce the State
Panhandling Bans...........................................................................................................................5

   d.   Defendants' Enforcement of the Panhandling Bans Harms Plaintiffs..................................5

III. Argument .........................................................................................................................7

   a.   Plaintiffs Are Substantially Likely to Succeed on the Merits of Their First Amendment
Claims. .............................................................................................................................................7

      i.   The Statutes Are Content-Based Restrictions on Protected Speech. ...............................9

      ii.  The Statutes Cannot Survive Strict Scrutiny Because They Are Not Narrowly Tailored
to Serve a Compelling Government Interest. ...........................................................................11

      iii. The Statutes Cannot Be Justified as Time, Place, and Manner Restrictions on Speech. 15

   b.   Plaintiffs are Suffering and Will Continue to Suffer Irreparable Injury in the Absence of
Preliminary Injunctive Relief...........................................................................................................17

   c.   The Threatened Injury to Plaintiffs Outweighs Any Potential Harm a Preliminary
Injunction Might Cause Defendants..................................................................................................18

   d.   A Preliminary Injunction Will Serve the Public Interest....................................................19

   e.   The Court Should Not Require Plaintiffs to Post a Security. ...............................................19

IV.  Conclusion ......................................................................................................................20

## I.    Introduction

The solicitation of charitable donations is protected speech. Laws seeking to constrain solicitation have consistently been struck down as content-based speech prohibitions, violative of the First Amendment for targeting speech because of the message expressed. Additionally, the Supreme Court has long held that communication in public spaces deserves the highest protections against government interference, lest state regulation chill speech in fora traditionally held open for the public exchange of ideas.

Jonathan Singleton, Ricky Vickery, and Micki Holmes (the "Plaintiffs"), three residents of Montgomery currently experiencing homelessness, face arrest, fines, and incarceration simply for asking their fellow citizens for assistance. Through Ala. Code § 13A-11-9(a)(1) prohibiting begging ("Begging Statute") and § 32-5A-216(b) prohibiting solicitation on highways ("Pedestrian Solicitation Statute") (collectively, "Statutes"), the City and County of Montgomery and State of Alabama have criminalized the speech of its neediest citizens, banning or unconstitutionally burdening all requests for assistance in public spaces in an effort to remove homeless individuals from public view.

These Statutes violate fundamental First Amendment principles without justification. Neither the City, County, or State has marshalled any meaningful evidence to support the necessity of these laws against solicitation. To the contrary, these policies simply telegraph disapproval for homeless individuals without working to ameliorate their circumstances.

A preliminary injunction enjoining the enforcement of the Begging Statute and the Pedestrian Solicitation Statute is warranted because these laws are plainly unconstitutional, and Plaintiffs are therefore likely to succeed on the merits. Further, Jonathan Singleton, Ricky Vickery, and Micki Holmes suffer irreparable harm because the laws criminalize their First Amendment

right to publicly solicit their fellow citizens for assistance. Enjoining these laws is in the public interest, and the threatened injury to Plaintiffs outweighs any potential harm that a preliminary injunction might cause Defendants.

## II.    Factual Background

### a. Alabama and Montgomery Have a Significant Homeless Population.

In 2019, Alabama had at least an estimated 3,261 residents experiencing homelessness on any given day.[1] Of that total, 236 were families, 292 were veterans, 320 were unaccompanied young adults, and 369 experienced chronic homelessness.[2] Public school data reported to the U.S. Department of Education during the 2016–2017 school year shows that at least an estimated 14,112 public school students in Alabama experienced homelessness over the course of the year.[3] In Montgomery County, at least 369 people are homeless on any given night, or 9.6 people per 10,000 people in the general population.[4] The State saw the second largest increase in homeless veterans across the country in 2018,[5] and  Montgomery had 542 homeless veterans that year.[6]

---

[1] Alabama Homelessness Statistics, United States Interagency Council on Homelessness (Jan. 2019), https://www.usich.gov/homelessness-statistics/al/, attached as Exhibit A to the Declaration of Clara Potter ("Potter Decl."), filed herewith. This figure is likely an underestimate. As the National Law Center on Homelessness & Poverty reported in an extensive 2017 report, these formal statistics often undercount the number of individuals actually experiencing homelessness at any given moment. *See* Don't Count On It: How the HUD Point-in-Time Count Underestimates the Homelessness Crisis in America, The National Law Center On Homelessness & Poverty (2017), https://nlchp.org/wp-content/uploads/2018/10/HUD-PIT-report2017.pdf, attached as Exhibit B to Potter Decl.

[2] *Id.*

[3] *See* Exhibit A to Potter Decl.

[4] Alabama, National Alliance to End Homelessness (2018), https://endhomelessness.org/homelessness-in-america/homelessness-statistics/state-of-homelessness-report/alabama/, attached as Exhibit C to Potter Decl.

[5] Christopher Harress, *More Alabama Veterans Struggle with Homelessness*, AL.com (Nov. 13, 2018), https://www.al.com/news/2018/11/homeless-veterans-in-alabama-on-the-rise.html.

[6] 2007-2018 Point-in-Time Estimate by COC, PIT Estimate, 2018 PIT Estimate of Veteran Homelessness in the U.S., HUD Exchange (Nov. 2018), https://www.hudexchange.info/resource/5772/2018-pit-estimate-of-veteran-homelessness-in-the-us/, attached as Exhibit D to Potter Decl.

**b. Defendants Enforce Statutes That Criminalize Panhandling.**

Instead of helping people exit homelessness by providing services to support them, the State and City have passed and enforce laws to criminalize requests for assistance.

The Begging Statute makes it a violation to "loiter[], remain[] or wander[] about in a public place for the purpose of begging." Ala. Code § 13A-11-9(a)(1), attached as Exhibit E to Potter Decl. This amounts to a total ban on all solicitation activity in public spaces across the State, including all public spaces in the City of Montgomery.

The Pedestrian Solicitation Statute makes it a crime for any person to "stand on a highway for the purpose of soliciting employment, business, or contributions from the occupant of any vehicle, nor for the purpose of distributing any article, unless otherwise authorized by official permit of the governing body of the city or county having jurisdiction over the highway." *Id.* § 32-5A-216(b), attached as Exhibit F to Potter Decl.[7]

These two Statutes are incorporated into the Montgomery City Code through a separate ordinance that explicitly adopts all state misdemeanors and violations, thereby enabling the City to concurrently enforce the Statutes alongside ALEA and the Montgomery Sheriff's Department. *See* Montgomery, Ala. Code § 1-9(a)-(b). Both Statutes are silent as to their purpose, and no legislative history is available to explain the Legislature's reasons for passing these laws.[8]

---

[7] The term "highway" has the same definition as "street," *compare id.* § 32-1-1.1(24) *with* § 32-1-1.1(74), and encompasses "every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." *Id.* § 32-1-1.1(24), (74). The highway includes the "entire width between the boundary lines" of a street, including the shoulder, berm and median areas. Op. Atty. Gen. No. 95-00308, 1995 WL 18097025 (Aug. 29, 1995).

[8] "Alabama does not create or maintain typical legislative-history material such as committee reports and records of hearings." *State v. $223,405.86*, 203 So. 3d 816, 832 n.8 (Ala. 2016). The commentary to the Pedestrian Solicitation Statute does not address the law's purpose. The Commentary to the Begging Statute simply describes the law as a "valid vagrancy statute" and recounts that earlier versions of the law that intended to "nip crimes in the bud" were found unconstitutional on grounds of vagueness, overbreadth, and the status crime doctrine. *See* Ala. Code § 13A-11-9 Commentary. The Commentary notes that the current

Those prosecuted by the City under either statute face fines of up to $500 and imprisonment in the city jail or hard labor for up to six months. *Id.* § 1-9(d), 1-6(c) (incorporating violations of state law as offenses against the City and setting out municipal punishment scheme for such violations).[9] From July 2018 through December 2020, Montgomery Municipal Court records report 35 charges of violating the Begging Statute and 394 charges of violating the Pedestrian Solicitation Statute.[10] Individuals have been sentenced to up to 180 days in jail, with 24 months of supervision and over $450 court fees:

| | |
|---|---|
| 3/20/2019 | DEFENDANT GUILTY; SENTENCED 180 DAYS; 170 DAYS SUSPENDED/MUST SERVE 10 DAYS; FINES AND COURT COST; 24 MOS COURT SUPERVISION; DEFT RESIDENT OF FRIENDSHIP MISSION PER JUDGE VICKERS |

*See* Docket Entry for Case No. 2019CRA000781, attached as Exhibit G to Potter Decl.; *see also* Docket Entry for Case No. 2019TRT018525, attached as Exhibit J to Potter Decl. Each of these

---

language was intended to punish begging, but only certain types of begging—not "that which is done by those who have suffered some misfortune which necessitates their selling pencils, apples or the like which the 'customer' really isn't supposed to accept after payment." *Id.*

However, vagrancy laws in America, including earlier versions of the Begging Statute, have historically been employed as tools of racial subjugation and oppression. Indeed, the Supreme Court noted that "vagrancy laws were used after the Civil War to keep former slaves in a state of quasi slavery," singling out Alabama's statute in particular for critique. *City of Chicago v. Morales,* 527 U.S. 41, 54 n. 20 (1999). Current anti-panhandling laws derive from discriminatory practices and continue to have disproportionately adverse impacts on people of color. *See, e.g.*, The Wrong Side of History: A Comparison of Modern & Historical Criminalization Laws, Javier Ortiz and Matthew Dick (May 2015), attached as Exhibit H to Potter Decl.; *see also* Housing Not Handcuffs: A Litigation Manual, National Law Center on Homelessness & Poverty 13 (2018), https://nlchp.org/wp-content/uploads/2018/10/Housing-Not-Handcuffs-Litigation-Manual.pdf (noting that laws targeting homeless individuals perpetuate "de facto and historically generated racial discrimination," as it is estimated that "some 50% of homeless people are African American although they constitute only 12% of the U.S. population"), attached as Exhibit I to Potter Decl.

[9] Those prosecuted by the State or County face sentences of up to 30 days and a fine of up to $200 under the Begging Statute, Ala Code. §§ 13A-5-12(b), 13A-5-7(b), and sentences under the Pedestrian Solicitation Statute that vary depending on the frequency of conviction, including up to three months and a $500 fine for three or more offenses in a year, *id.* § 32-5A-8(a).

[10] Spreadsheet of Begging and Pedestrian Solicitation Charges, attached as Ex. O to Potter Decl.

individual charges has attendant City resource expenditures—including expenses associated with law enforcement, prosecutions, and possible jail time.

### c. Despite Repealing a City Panhandling Ban, the City Continues to Enforce the State Panhandling Bans.

In July 2019, the City of Montgomery passed Ordinance No. 24-2019, attached as Exhibit K to Potter Decl., to criminalize all panhandling in the City and impose a fine and mandatory jail time for all violations. The Ordinance was enacted after only very brief discussion at a City Council work session and meeting.[11] After a large public outcry, letters demonstrating the unconstitutionality of the Ordinance, and meetings about the problems with the Ordinance and Statutes, the City voted at a meeting in November 2019 to rescind the Ordinance. The City has not, however, taken any action to exempt the Statutes from its ordinance incorporating all state misdemeanors and state violations into its municipal code.

### d. Defendants' Enforcement of the Panhandling Bans Harms Plaintiffs.

The experiences of the named Plaintiffs in this action demonstrate the harm of these laws. Plaintiff Jonathan Singleton, a homeless resident of Montgomery who lives under one of the City's bridges or pays $10 to sleep on a person's porch, has been ticketed or jailed six times for panhandling by the Montgomery Police Department. *See* Court Records of Jonathan Singleton, attached as Exhibit L to Potter Decl.; *see also* Singleton Decl. ¶¶ 2, 7. Most recently, on September 30, 2019, he was given a ticket for standing on the grass near a highway exit with a sign which read: "HOMELESS. Today it is me, tomorrow it could be you." *Id.* ¶¶ 8, 9. He chose this message

---

[11] *See City of Montgomery Work Session,* at 0:44 (Jul. 2, 2019), https://www.youtube.com/watch?time_continue=78&v=_m7OeA_aQlc; *Montgomery City Council Meeting,* at 4:30 (July 2, 2019), https://youtu.be/THGN4vK-sKY; *see also* WSFA, *Montgomery Mayor Delays Panhandler Plan Amid SPLC Lawsuit Threat,* https://www.wsfa.com/2019/07/10/splc-threatens-sue-over-montgomery-panhandler-plan/ (quoting the Mayor stating, "I was surprised, frankly, that it was brought up while I was gone, and that with almost no conversation as to how you implement it, asking the police how you might enforce it, that there was a 9-0 vote.").

to try to connect with other residents, emphasizing that "you never know what a person has been through until you ask them." *Id.* ¶ 8. Due to his homelessness, Mr. Singleton has struggled to secure stable employment, which in turn has perpetuated his inability to afford housing, and also contributed to his difficulties with properly treating his chronic illnesses, including pancreatitis, uncontrolled diabetes, and kidney failure. *Id.* ¶¶ 3, 4.

For Mr. Singleton, requesting assistance from others is the only viable way to obtain money for survival, given the dearth of available support services in the City of Montgomery. Singleton Decl. ¶¶ 5,14. But engaging in solicitation comes at great personal cost. Police officers and strangers alike have treated Mr. Singleton with cruelty. *Id.* ¶¶ 6, 11. For instance, strangers frequently criticize him, casting aspersions by accusing him of lying about his homelessness, telling him to find employment, and threatening to call the police. *Id.* ¶ 6. One officer even told Mr. Singleton that "it is a crime to be homeless in Montgomery." *Id.* ¶ 10. Because of this harassment, Mr. Singleton has a constant fear of arrest that has led him to feel lonely, scared, and anxious. *Id.* ¶¶ 12, 13.

Plaintiff Ricky Vickery is also a homeless resident of Montgomery. Since arriving in Montgomery in 2018, he has been ticketed or jailed about fifteen times for panhandling by the Montgomery Police Department. *See* Court Records of Ricky Vickery, attached as Exhibit M to Potter Decl.; Declaration of Ricky Vickery ("Vickery Decl.") ¶ 3. However, without adequate services offered by the City or State, he has little choice but to continue, despite fear of arrest. Vickery Decl. ¶¶ 7, 8. When he panhandles, Mr. Vickery often holds a sign that says "homeless and hungry," which prompts conversations and interactions with passersby about his homelessness. *Id.* ¶ 5. He, too, has experienced cruel behavior which has left him feeling degraded, humiliated, and afraid of arrest or mistreatment at the hands of the police. *Id.* ¶ 6, 7. And, as a

result of being unsheltered, he suffers physically and is often exposed to the elements—extreme heat in summer and cold in winter. *Id.* ¶ 7.

Plaintiff Micki Holmes' experiences are similar. Over the past year, Mr. Holmes has had to panhandle to support himself and his wife, for whom he is the primary caregiver due to her brain damage from chronic mold exposure and seizures. Declaration of Micki Holmes ("Holmes Decl.") ¶¶ 1, 7, 8. He began panhandling in December 2018 after being evicted on Christmas Eve from a motel in which they were staying. *Id.* ¶ 3. While panhandling, Mr. Holmes carries a sign that says "homeless." *Id.* ¶ 4. This sign, which he uses to initiate conversation with individuals from whom he requests assistance, has been confiscated by the Montgomery Police Department, and he has been ticketed and threatened with arrest on multiple occasions. *Id.* ¶ 5; *see also* Solicitation Ticket of Micki Holmes, attached as Exhibit N to Potter Decl. He is especially fearful of arrest because, in his absence, his wife will not have the critical support she relies on to manage her medical conditions. *Id.* ¶ 8. But even with the great potential cost of arrest, he continues to have to rely on the kindness of others for assistance by engaging in panhandling because of the lack of public services for individuals in his position. Holmes Decl. ¶¶ 9, 10.

## III.   Argument

A preliminary injunction is warranted where the moving party demonstrates: (1) a substantial likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that an injunction would not disserve the public interest. *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). All four factors weigh in favor of granting a preliminary injunction.

### a. Plaintiffs Are Substantially Likely to Succeed on the Merits of Their First Amendment Claims.

7

The Statutes are unconstitutional content-based restrictions on protected speech under clearly established Supreme Court precedent. The Court has long held, and recently reaffirmed in the seminal case *Reed v. Town of Gilbert*, that "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional." 135 S. Ct. 2218, 2226 (2015). *Reed* emphasized that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. Such content-based restrictions on speech are subject to strict scrutiny. Since *Reed*, every court to have considered a categorical ban on panhandling has struck down the ban as violative of the First Amendment. *See Thayer v. City of Worcester*, 755 F.3d 60 (1st Cir. 2014), *vacated*, 135 S. Ct. 2887 (2015), *declaring ordinance unconstitutional on remand*, 144 F. Supp. 3d 218, 233, 228 (D. Mass. 2015) (noting that "all of the Courts which have addressed similar laws since *Reed* have found them to be content based and therefore, subject to strict scrutiny" and striking down substantially similar law making it "unlawful for any person to beg, panhandle or solicit any other person in an aggressive manner"); *see also, e.g.*, *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015) (striking down law banning panhandling as a "request for an immediate donation of money"); *Homeless Helping Homeless, Inc., v. City of Tampa*, No. 8:15-cv-1219, 2016 WL 4162882, at *1 (M.D. Fla. Aug. 5, 2016) (finding unconstitutional law that "ban[ned] the solicitation of 'donations or payment'" in large geographic swaths of the city, akin to the Pedestrian Solicitation Statute).

Even if the laws could somehow be construed after *Reed* and the subsequent uniform precedent as content-neutral, they are unconstitutional time, place, and manner restrictions. In traditional public fora, the government may regulate the time, place, or manner of protected speech only if such regulation is narrowly tailored to serve a legitimate, content-neutral interest. *Ward v.*

*Rock Against Racism,* 491 U.S. 781, 798 (1989). However, it must "leave open ample alternative channels of communication." *Smith v. City of Fort Lauderdale,* 177 F.3d 954, 956 (11th Cir. 1999) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983)). The Statutes are neither narrowly tailored, nor do they leave open alternative channels of communication; indeed, the Begging Statute is a ban on all solicitation activity applicable to the entire State, and the Pedestrian Solicitation Statute is a ban on all solicitation activity on all public streets across the State. Therefore, both laws also fail under intermediate scrutiny as time, place, and manner restrictions.

### i.  The Statutes Are Content-Based Restrictions on Protected Speech.

Plaintiffs are substantially likely to show that the challenged Statutes are content-based restrictions on speech and therefore presumptively unconstitutional. In *Reed,* the Supreme Court clarified that laws prohibit speech on the basis of content any time they target the underlying substantive topic or message of speech and "cannot be justified without reference to the content of the regulated speech." 135 S. Ct. at 2227. Any law prohibiting speech on the basis of content is "presumptively unconstitutional" and is subject to strict scrutiny. *Id.* at 2226.

The Begging Statute restricts speech on the basis of content. The Statute is not simply a prohibition on loitering writ large; it specifically makes loitering "for the purpose of begging" illegal. Ala. Code § 13A-11-9(a)(1). "[L]ike other charitable solicitation, begging is speech entitled to First Amendment protection[.]" *Smith,* 177 F.3d at 956; *see also Vill. of Schaumburg v. Citizens for a Better Env't,* 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds . . . involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment."); *Thayer,* 144 F. Supp. at 232 ("Soliciting contributions is expressive activity that is protected by

9

the First Amendment."). The Statute's prohibition on begging is meaningless without reference to the subject matter of the regulated speech—Plaintiffs Holmes, Singleton, and Vickery may loiter while expressing any message *except* their need for financial assistance. As such, the Begging Statute overtly distinguishes between types of speech based on "subject matter[,] . . . function or purpose," *Reed*, 135 S. Ct. at 2227, and squarely targets speech "because of the topic discussed." *Norton*, 806 F.3d at 412 (finding panhandling ordinance that prohibited verbal requests for immediate payments of money content-based in light of *Reed*); *Thayer*, 144 F. Supp. 3d at 233 (noting that "all of the Courts which have addressed similar [panhandling] laws since *Reed* have found them to be content based"). Because Plaintiffs may engage in any speech except to beg, the Begging Statute is a content-based regulation and therefore subject to strict scrutiny.

For the same reasons, the Pedestrian Solicitation Statute is also a content-based restriction on speech. The Statute targets solicitation of "employment, business, or contributions from the occupant of any vehicle." Ala. Code § 32-5A-216(b). Individuals could stand by a public street and express, for instance, political or religious messages to passersby without running afoul of the law, but not request money or the means to earn money. These laws therefore prohibit and burden speech based on "the idea or message expressed" and must be evaluated as content-based restrictions. *Reed*, 135 S. Ct. at 2227.[12]

---

[12] To the extent the Pedestrian Solicitation Statute allows individuals to apply for a permit, it still impermissibly burdens speech as a content-based prior restraint. "A prior restraint exists 'when the government can deny access to a forum for expression before the expression occurs.'" *Bischoff v. Florida*, 242 F. Supp. 2d 1226, 1247 (M.D. Fla. 2003) (citing *United States v. Frandsen*, 212 F.3d 1231, 1235–37 (11th Cir. 2000)). "Permitting ordinances . . . are classic examples of prior restraints." *Barret v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1223 (11th Cir. 2017).

The permitting process alluded to in the Pedestrian Solicitation Statute has none of the constitutionally required procedural safeguards recognized by the Supreme Court: defined and brief temporal limits, judicial review, and a burden on the government to justify its permitting decisions in court. *Granite State Outdoor Advert., Inc. v. City of St. Petersburg*, 348 F.3d 1278, 1281 (11th Cir. 2003) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990)). Furthermore, the City and County have no authority to

###### ii.    The Statutes Cannot Survive Strict Scrutiny Because They Are Not Narrowly Tailored to Serve a Compelling Government Interest.

Content-based laws like the Statutes challenged here are subject to the most exacting standard—strict scrutiny—because of the weightiness of the interests at stake. The Statutes cannot survive the high burden of strict scrutiny because, as blanket content-based restrictions on speech, they are not narrowly tailored to serve a compelling government interest. *See Reed*, 135 S. Ct. at 2227. Once the government identifies a compelling interest, it is the government's burden to show that a law is narrowly tailored to meet that interest. *Id.* To be narrowly tailored, "the Government's chosen restriction on the speech at issue must be 'actually necessary' to achieve its interest. There must be a direct causal link between the restriction imposed and the injury to be prevented." *See United States v. Alvarez*, 567 U.S. 709, 725 (2012). Additionally, the government cannot create a law that is over- or underinclusive, capturing substantially more or less speech activity than necessary. The government must show that "it is using the 'least restrictive means to further' [its compelling interest]." *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 670 (E.D. La. 2017) (quoting *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000)). To do so, "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 467 (2014).

The Begging Statute and Pedestrian Solicitation Statute are silent as to purpose, and there is no legislative history on the topic available. *See State v. $223,405.86*, 203 So. 3d 816, 832 n.8 (Ala. 2016) ("Alabama does not create or maintain typical legislative-history material such as

---

issue permits for solicitation on state highways, which are outside their jurisdiction. *See* Ala. Op. Att'y Gen. No. 82-00014, 1981 WL 726044 (Oct. 20, 1981). And in practice, neither the City nor County of Montgomery has established any permitting process at all. *See* Declaration of Symone Jackson.

committee reports and records of hearings."). As discussed in note 8, the laws have no clearly stated justification for banning solicitation. Moreover, there is no conceivable compelling government interest to which the Statutes are narrowly tailored.

For instance, the Statutes cannot be justified in the service of hypothetical traffic safety goals, as traffic safety has not been recognized as a compelling interest in the Eleventh Circuit. *See Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1267 (11th Cir. 2005). A mere "'fear of someone being hurt and/or injured' [where Defendants are] unaware of any accidents or injuries caused by speech-related activities" is insufficient to support restrictions on begging and panhandling. *Thayer*, 144 F. Supp. 3d at 235, 227. Instead, Defendants must allege facts showing how specific safety problems would be solved by a panhandling ban. *See Alvarez*, 567 U.S. at 725.

Here, Defendants have marshalled no evidence to support the proposition that peaceful begging or solicitation on the highway, or anywhere else in the City, impinges on traffic safety. The government cannot "merely affirm the uncontroversial proposition that pedestrian proximity to high-volume roadways can be dangerous and the risk increases as vehicle speed increases." *Martin v. City of Albuquerque*, 396 F. Supp. 3d 1008, 1032 (D.N.M. 2019) (rejecting traffic safety as a rationale for narrow tailoring in support of a law banning certain pedestrian activity in particular locations).

Even were the Statutes designed to protect a compelling traffic safety interest, they are not narrowly tailored to achieve that end. By suggesting that it is designed to "nip crimes in the bud," the Begging Statute "recites those interests only at the highest order of abstraction, without ever explaining how they are served by the [statute's] regulations generally." *Solantic*, 410 F.3d at 1267. What's more, the Begging Statute is both over- and underinclusive. It is overinclusive because it is a complete ban on all solicitation across the State—the Begging Statute makes no

attempt to cover only the most dangerous solicitation. Furthermore, even if Defendants could support their assertions of dangerousness and allege an appropriate causal connection between the Begging Statute and traffic safety, it is underinclusive for failing to ban other types of speech that might put that safety at risk. A "law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *Reed*, 135 S. Ct at 2232 (quoting *Republican Party of Minn. v. White,* 536 U.S. 765, 780 (2002)).

The Pedestrian Solicitation Statute similarly prohibits all solicitation-oriented communication on all public streets without any consideration of whether certain types of requests for assistance or certain locations are more dangerous than others, or whether other types of speech not included in its ban might be similarly dangerous. As such, the Pedestrian Solicitation Statute is also both over- and underinclusive. For instance, a person could flag down a car traveling 80 miles an hour on an area of highway with little shoulder to ask for directions, but would be prohibited from approaching a car stopped at a stop sign to ask for financial assistance. Without particularity as to why certain speech is dangerous in particular locations, Defendants cannot show that "each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz,* 487 U.S. 474, 485 (1988). Nor can Defendants present any evidence supporting a close causal fit between the prohibitions and public or traffic safety. Consequently, the Statutes simultaneously sweep too broadly and too narrowly.

Further, existing laws adequately safeguard any traffic safety interests that might be served by the Statutes, indicating that these are not the "least restrictive means to further" safety. *Playboy Entm't Grp., Inc.*, 529 U.S. at 813. To the extent the Statutes are meant to protect the safety of drivers or pedestrians, occupying the roadways in a dangerous manner is also against the law in

13

Alabama. *See* Ala. Code §§ 32-5A-212, 32-5A-215; Montgomery Code of Ordinance § 27-10.

Moreover, any purportedly "aggressive" behavior from individuals requesting money is illegal

under existing statutes.[13] *See, e.g.*, Ala. Code §§ 13A-11-7 (disorderly conduct), 13A-11-8

(harassment). In enacting the Statutes, the State provided no evidence that these other methods to

address the problem would not be equally effective. *McLaughlin v. City of Lowell*, 140 F. Supp.

3d 177, 193 (D. Mass. 2015) (requiring the City to show why the additional prohibition on and

penalties for panhandling were necessary where existing laws addressed the asserted safety

concerns); *McCullen*, 573 U.S. at 494 (requiring the state to show that alternative measures that

burdened less speech were ineffective to address the asserted public safety threat).

Because the Statutes are not narrowly tailored to serve any conceivable compelling

government interest, they cannot survive strict scrutiny. Courts assessing content-based

panhandling bans since *Reed* have unanimously found the same. *See, e.g.*, *Norton*, 806 F.3d at 412

(striking down law prohibiting "oral request[s] for an immediate donation of money" as

unconstitutional after *Reed* because law was content-based and did not pass strict scrutiny); *Blitch*,

260 F. Supp. 3d at 671 (rejecting panhandling ban for lack of narrow tailoring under strict scrutiny,

noting that "[t]here is nothing illegal about being poor and needing assistance, and [the

government] cannot take a sledgehammer to a problem that can and should be solved with a

scalpel" (internal citations omitted)); *Homeless Helping Homeless, Inc.*, 2016 WL 4162882, at *

2 (finding ban on solicitations for "donations or payment" was content-based and failed strict

scrutiny); *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1294 (D. Col. 2015) (striking

down ordinance banning panhandling as content-based and not narrowly tailored under strict

---

[13] The City of Montgomery has even employed these other laws against the Plaintiffs to the same effect.
*See* Singleton, Vickery, Holmes records, attached as Exhibits L, M, N to Potter Decl.

scrutiny); *Thayer*, 144 F. Supp. 3d at 237 (striking down law under strict scrutiny, noting that despite the City's "legitimate interest in promoting the safety and convenience of its citizens on public sidewalks and streets," the City's aggressive panhandling ordinance prohibiting immediate donations of money was "not the least restrictive means available to protect the public and therefore, [did] not satisfy strict scrutiny").[14] This Court should follow the example of this overwhelming body of precedent.

### iii.   The Statutes Cannot Be Justified as Time, Place, and Manner Restrictions on Speech.

*Reed* clarified that restrictions like the Statutes are undoubtedly content-based. But even if, despite the unanimity of caselaw, they could be considered content-neutral after *Reed*, the laws still cannot pass intermediate scrutiny as regulations of the time, place, and manner of speech. The Begging Statute prohibits solicitation in all public spaces and the Pedestrian Solicitation Statute prohibits solicitation on all public streets without a permit issued by a local government official. In these traditional public fora, "[t]he state may [] enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n*, 460 U.S. at 45.

As previously discussed in Part III-a-ii, these laws are not narrowly tailored to serve the government's interests because they sweep far too broadly—neither differentiates between speech that threatens the government's legitimate interests and that which does not. Because the Begging Statute prohibits begging at all times and in all places and manners across the entire state of

---

[14] Indeed, even prior to *Reed* many courts found comparably-worded statutes unconstitutional. *See, e.g., Reynolds v. Middleton*, 779 F.3d 222, 224 (4th Cir. 2015) (comparable to Pedestrian Solicitation Statute); *Speet v. Schuette*, 726 F.3d 867, 875 (6th Cir. 2013) (comparable to Begging Statute); *Loper v. New York City Police Dep't*, 999 F.2d 699, 701 (2d. Cir. 1993) (same).

Alabama, it is not narrowly tailored to serve a significant government interest. Similarly, the Pedestrian Solicitation Statute is a categorical ban on all solicitation activity on all streets in Montgomery, and across the State, without any consideration of whether certain streets are more dangerous than others. Additionally, the City and State already have many laws on the books for addressing the problems that these regulations purportedly target. *See supra* Part III-a-ii. As such, these laws "burden substantially more speech than is necessary." *McCullen*, 573 U.S. at 486; *see also Reynolds*, 779 F.3d at 231.

And critically, "[b]ecause of the total prohibition [they] command[] [these laws] do[] not leave open alternative channels of communication by which [people who panhandle] can convey their messages of indigency." *Loper*, 999 F.2d at 705. The citizens of Montgomery, and Alabama more broadly, must have "*ample* alternative avenues" for communication. *Chase v. Town of Ocean City*, 825 F. Supp. 2d 599, 615 (D. Md. 2011) (citation omitted) (emphasis added). Here, Defendants leave *none*. The bans are plainly "geographically over-inclusive" because they blanket all streets across the State, and indeed all public places in the State of Alabama. *Cutting v. City of Portland*, 802 F.3d 79, 89 (1st Cir. 2015).

Courts have consistently held that bans on solicitation, panhandling, or other similar speech violate intermediate scrutiny because they do not leave open sufficient channels of communication. *See, e.g.*, *McCullen*, 573 U.S. at 497 (finding abortion clinic buffer zone regulation, though content-neutral, was not narrowly tailored); *Reynolds*, 779 F.3d at 232 (striking down county-wide ban on highway solicitation); *Cutting*, 802 F.3d at 89 (striking down ban on sitting or standing in all medians in the city as "geographically over-inclusive" because it did not leave open alternative channels of communication); *John Martin v. City of Albuquerque*, No. CIV 18-0031, 2019 WL

3557548, at *16 (D.N.M. Aug. 5, 2019). The Statutes similarly cannot withstand intermediate scrutiny here.

**b. Plaintiffs are Suffering and Will Continue to Suffer Irreparable Injury in the Absence of Preliminary Injunctive Relief.**

"[A]n injury is 'irreparable' only if it cannot be undone through monetary damages." *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983). A harm to speech rights is such an injury, which, "because of [their] intangible nature, could not be compensated for by monetary damages." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Cate*, 707 F.2d at 1189 ("One reason for such stringent protection of First Amendment rights certainly is the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.").

Injunctive relief is especially appropriate where the injury to Plaintiffs' rights is "direct penalization, as opposed to incidental inhibition of First Amendment rights." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). In fact, First Amendment harms are one of two areas where the Eleventh Circuit has categorically declared that "an on-going violation may be presumed to cause irreparable injury." *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (noting that "the right of privacy and certain First Amendment claims establishing imminent likelihood that pure speech will be chilled or prevented altogether" are two areas where irreparable injury is presumed).

Without a preliminary injunction, Plaintiffs will continue to be irreparably harmed. Plaintiffs all report fear of arrest or other reprisal for continued panhandling. *See* Holmes Decl. ¶ 10; Singleton Decl. ¶ 13; Vickery Decl. ¶ 8. The Statutes clearly burden Plaintiffs' constitutionally-

protected speech rights in a manner that cannot be cured by monetary damages, penalizing their continued exercise of their right to solicit. *See Los Angeles Alliance for Survival v. City of Los Angeles*, 224 F.3d 1076, 1076 (9th Cir. 2000) (granting preliminary injunction in challenge to solicitation statute where plaintiffs "would be irreparably injured absent the preliminary injunction"); *Chase v. City of Gainesville*, No. 1:06-cv-044, 2006 WL 2620260, at *2 (N.D. Fla. 2006) (finding irreparable injury and granting preliminary injunction where city imposed "fines and arrests, for engaging in charitable solicitation").

### c. The Threatened Injury to Plaintiffs Outweighs Any Potential Harm a Preliminary Injunction Might Cause Defendants.

The threat of injury to Plaintiffs considerably outweighs any threat of harm to Defendants. As discussed in the preceding section, the injury to Plaintiffs' First Amendment rights is substantial and irreparable. "Even a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *KH Outdoor*, 458 F.3d at 1270. Without preliminary injunctive relief, Plaintiffs will continue to suffer violations of their First Amendment rights.

Weighed against this harm, Defendants can claim no constitutionally cognizable interest in enforcing laws that are facially unconstitutional. *See id.* at 1272 ("[T]he city has no legitimate interest in enforcing an unconstitutional ordinance."); *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("[T]here can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties." (internal citations and quotation marks omitted)). Moreover, a preliminary injunction would not undermine any of Defendants' conceivable interests. As discussed in Part III-a-ii, Defendants have a vast arsenal of specific statutes and ordinances already at their disposal to protect against the purported ills that the Statutes target. *See, e.g., Chase*, 2006 WL 2620260, at *3 (holding that an injunction would not be adverse to the public interest because

"[c]itizens' interests in remaining safe while walking or driving are served by other statutes and codes available to law enforcement officers, and the public certainly has an interest in seeing that its constitutional rights are protected.").[15] Therefore, the threatened injury to Plaintiffs overwhelmingly outweighs any harm to Defendants.

### d.  A Preliminary Injunction Will Serve the Public Interest.

The public interest also weighs in favor of granting preliminary injunctive relief on behalf of Plaintiffs. "[T]he public interest is always served in promoting First Amendment values." *Chase*, 2006 WL 2620260, at *3. When assessing the appropriateness of preliminary injunctive relief where "the state is a party, the third and fourth considerations are largely the same." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). Additionally, "[t]he public interest does not support [Defendants'] expenditure of time, money, and effort in attempting to enforce [statutes] that may well be held unconstitutional." *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. Unit B 1981).[16] For these reasons, the public interest is served by enjoining the enforcement of the Statutes.

### e.  The Court Should Not Require Plaintiffs to Post a Security.

The Court should issue injunctive relief without requiring Plaintiffs to post security. Rule 65(c) permits security to protect the other party from any financial harm caused by a temporary injunction, but under this Circuit's "interpretation of Rule 65(c), the amount of security required by the rule is a matter within the discretion of the trial court," which "may elect to require no

---

[15] And Plaintiffs' court records indicate that the City is in fact using these other laws against Plaintiffs. *See* Exhibits L, M, N to Potter Decl.

[16] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding all Fifth Circuit cases submitted or decided prior to October 1, 1981.

security at all." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B Feb. 1981) (internal citation and quotation marks omitted).

Plaintiffs are indigent, and their inability to post security should not prevent them from obtaining a court order to protect their constitutional rights. Holmes Decl. ¶ 2; Singleton Decl. ¶ 2, 3, 13; Vickery Decl. ¶ 2; *see also Wayne Chem. v. Columbus Agency Serv. Corp.*, 567 F.2d 692, 701 (7th Cir. 1977) (affirming no bond for indigent); *Johnson v. Bd. of Police Comm'rs*, 351 F. Supp. 2d 929, 952 (E.D. Mo. 2004) (no bond for homeless plaintiffs).

Further, Plaintiffs are "engaged in public-interest litigation, an area in which the courts have recognized an exception to the Rule 65 security requirement" because requiring security would deter others from exercising their constitutional rights. *City of Atlanta*, 636 F.2d at 1094.

Finally, as discussed in Part III-a, Plaintiffs have a substantial likelihood of success on the merits. It has been thoroughly established by every court to consider this issue since *Reed* that laws such as those challenged here clearly violate the First Amendment. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("[N]o security was needed because of the strength of [plaintiff's] case and the strong public interest involved.").

## IV.   Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' motion and enjoin Defendants from enforcing the Begging Statute and Pedestrian Solicitation Statute.

Dated: February 12, 2020.                Respectfully submitted,

*Ellen Degnan*

Ellen Degnan
*On Behalf of Plaintiffs' Counsel*

Ellen Degnan (ASB-3244-I12V)
Micah West (ASB-1842-J82F)
Sara Zampierin (ASB-1695-S34H)

20

SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
T: (334) 956-8200
F: (334) 956-8481
E: ellen.degnan@splcenter.org
E: micah.west@splcenter.org
E: sara.zampierin@splcenter.org

Clara Potter* (La. Bar No. 38377)
SOUTHERN POVERTY LAW CENTER
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
T: (504) 486-8982
F: (504) 486-8947
E: clara.potter@splcenter.org

Randall C. Marshall (ASB-3023-A56M)
ACLU FOUNDATION OF ALABAMA
P.O. Box 6179
Montgomery, AL 36106
T: (334) 265-2754
E: rmarshall@aclualabama.org

Tristia Bauman* (D.C. Bar No. 1016342)
NATIONAL LAW CENTER ON
HOMELESSNESS & POVERTY
2000 M Street NW, Suite 210
Washington, D.C., 20036
T: (202) 638-2535 x. 102
F: (202) 638-2737
E: tbauman@nlchp.org

*applications for pro hac vice forthcoming*

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that arrangements have been made to deliver a true and correct copy of the foregoing by hand delivery to the following parties, at the below addresses:

Hal Taylor, Secretary of Alabama Law Enforcement Agency
301 South Ripley Street, Suite 3000
Montgomery, AL 36104

Derrick Cunningham
Montgomery County Sheriff's Office
115 South Perry Street
Montgomery, AL 36103

Steve Marshall
State of Alabama Attorney General's Office
501 Washington Avenue
Montgomery, AL 36104

Brenda Gale Blalock
City Clerk
103 North Perry Street
Montgomery, AL 36104

Formal proof of service will be filed with the Court when completed.

DATED this February 12, 2020.

Ellen Degnan

Ellen Degnan