**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| JONATHAN SINGLETON, RICKY VICKERY, and MICKI HOLMES, | |
| Plaintiffs, | |
| v. | Case No. 2:20-cv-00099-WKW-JTA |
| CITY OF MONTGOMERY, ALABAMA, DERRICK CUNNINGHAM, in his official capacity as Sheriff for Montgomery County, and HAL TAYLOR, in his official capacity as Secretary of the Alabama Law Enforcement Agency, Defendants. | CLASS ACTION |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CUNNINGHAMS'S MOTION TO DISMISS**

## I.   Introduction

Plaintiffs Jonathan Singleton, Ricky Vickery, and Micki Holmes are three residents of Montgomery County, Alabama, experiencing homelessness, food scarcity, and health problems. To acquire basic necessities, each solicits donations from strangers. Panhandling is unequivocally protected by the First Amendment. *See Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds . . . are within the protection of the First Amendment."). But it is also criminalized by two Alabama statutes: Ala. Code § 13A-11-9(a)(1), prohibiting begging ("the Begging Statute"); and Ala. Code § 32-5A-216(b), prohibiting solicitation ("the Pedestrian Solicitation Statute") (collectively "the Statutes"). Plaintiffs must therefore decide between risking criminal prosecution or foregoing the exercise of their

constitutional rights. Criminalizing panhandling erects further barriers to health and safety for those with already-limited means to obtain life necessities.

Defendant Cunningham does not attempt to defend the constitutionality of these statutes in his Motion to Dismiss. Nor could he. Every court that has considered a comparable challenge has found that anti-panhandling laws violate the First Amendment. *See, e.g.*, *Thayer v. City of Worcester*, 755 F.3d 60 (1st Cir. 2014), *vacated*, 135 S. Ct. 2887 (2015), *declaring ordinance unconstitutional on remand*, 144 F. Supp. 3d 218, 233 (D. Mass. 2015) (striking down anti-panhandling law, noting that "all of the Courts which have addressed similar laws since *Reed* have found them to be content based and therefore, subject to strict scrutiny");  ECF 6 at 10.

Defendant Cunningham relies on procedural arguments alone, casting Plaintiffs' injuries as purely speculative and outside this Court's jurisdiction. These arguments must fail. Plaintiffs have standing to sue Defendant Cunningham because they face a credible threat that the Sheriff will prosecute them for panhandling—an injury that would be redressed by the prospective relief sought here: an injunction against future enforcement of the Statutes and a declaration that they are unconstitutional. Defendant Cunningham has a "duty" to "ferret out crime" in Montgomery County, Ala. Code § 36-22-3(a)(4), including "within the city limits," Ala. Op. Att'y Gen. No. 98-00188, 1998 WL 35869489, at *2 (July 28, 1998). This authority—and duty—to enforce the challenged laws is a sufficient connection to fall within the *Ex parte Young* exception to sovereign immunity and to meet the requirements of the Declaratory Judgment Act. Defendant Cunningham's post-litigation representations that he has no "intention" to enforce these laws in the future do not moot this case: he has issued no formal policy disavowing the laws or prohibiting enforcement, and he (or future sheriffs) could change course at any time. For the following reasons, this Court should deny Defendant Cunningham's Motion to Dismiss.

2

## II.      Factual Background[1]

Plaintiffs Ricky Vickery, Jonathan Singleton, and Micki Holmes are three Montgomery County, Alabama, residents experiencing homelessness. *See* ECF 4 ¶¶ 2, 28, 37, 43; *see also* ECF 6-15 ¶ 2; ECF 6-16 ¶ 2; ECF 6-17 ¶ 2. They have no stable income and meet their basic needs by panhandling, that is, by soliciting donations from others in public spaces. ECF 4 ¶¶ 2, 15, 32, 38, 45; *see also* ECF 6-15 ¶¶ 3–5; ECF 6-16 ¶¶ 4–5; ECF 6-17 ¶¶ 3–4. Panhandling is criminalized by the Begging Statute and the Pedestrian Solicitation Statute. ECF 4 ¶¶ 17–19. As a result, Plaintiffs panhandle under constant fear of citation, arrest, and prosecution for engaging in speech protected by the First Amendment. *Id.* ¶¶ 15–16. This fear is grounded in experience, as each Plaintiff has been cited by law enforcement in the past for soliciting funds. *Id.* ¶¶ 33, 41, 47. All three Plaintiffs have been cited or arrested for violating the Pedestrian Solicitation Statute, *see* ECF 22-1 (collecting Mr. Singleton's charges); ECF 22-2 (same as to Mr. Vickery); ECF 22-3 (same as to Mr. Holmes); ECF 4 ¶¶ 33, 41, 47, and Mr. Vickery has been cited or arrested for violating the Begging Statute, *see* ECF 22-2 at 30; ECF 4 ¶ 41. Despite great personal risk and fear, Plaintiffs have little choice but to continue panhandling. *See* ECF 4 ¶¶ 36, 42, 48; *see also* ECF 6-15 ¶¶ 12–14; ECF 6-16 ¶¶ 6–8; ECF 6-17 ¶¶ 8–10.

Defendant Cunningham has the legal duty to enforce the Statutes within the County and City of Montgomery. ECF 4 ¶ 24. Under state statute, he has the "duty" to "ferret out crime, apprehend and arrest criminals and, insofar as within [his] power, secure evidence of crimes in [his] count[y]." *Id.* (quoting Ala. Code § 36-22-3(a)(4)). This duty "extends equally across the county to include areas within the city limits or police jurisdiction." Ala. Op. Att'y Gen. No. 98-

---

[1] Plaintiffs include citations both to record evidence—relevant to Defendant's challenge to subject matter jurisdiction—and to the Complaint, ECF 4, relevant to Defendant's challenge to the sufficiency of the factual allegations in the complaint.

00188, 1998 WL 35869489, at *2 (July 28, 1998). Not only does Sheriff Cunningham have authority to enforce these laws, he enforces them in practice.[2] *See* Declaration of Clara Potter, attached as Exhibit 1, ¶ 2 (hereinafter "Potter Decl.").

Plaintiffs seek a declaration that the Statutes are unconstitutional and an injunction preventing Defendant Cunningham from enforcing either law in the future. ECF 4 at 15–16. This relief—sought to remedy harms to their First Amendment rights—is entirely forward-looking. *Id*.

On March 5, 2020, Defendant Cunningham filed a motion to dismiss. ECF 25. He attached an affidavit to his brief incorrectly stating that he "has never enforced these statutes" and that he has "no intention of ever enforcing these statutes in the future." *Id.* at ¶¶ 5, 7. He did not indicate whether this "intention" was promulgated as an official department directive or communicated to all employees in the Montgomery County Sheriff's Office or whether the change in policy occurred following careful deliberation about the constitutionality of the statutes. Defendant Cunningham is not bound by the representations in the affidavit, and neither are future sheriffs. His "intention" to not enforce the statutes could change—with the political winds—at any time.

### III.    Standard of Review for Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court assesses whether the complaint includes "enough facts

---

[2] Plaintiffs located evidence that the Sheriff has previously enforced the Pedestrian Solicitation Statute through a search on Alacourt, Alabama's electronic filing system. However, Plaintiffs were unable to perform an exhaustive search because they have not had an opportunity for discovery and because Alacourt does not have a search function that allows a party to search for cases by criminal charge. Thus, locating evidence of past enforcement requires searching every record that has been filed on Alacourt, an arduous task given the thousands of charges that are filed each year in Montgomery County, Alabama. Plaintiffs nevertheless ask this Court to take judicial notice of the criminal court records that they were able to find. The records demonstrate that the Sheriff has enforced the Pedestrian Solicitation Statute previously. This is a "fact[] not seriously open to dispute" that can be "established as true without the normal requirement of proof by evidence." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004); *see also* Fed. R. Evid. 201(a), advisory committee's notes (explaining that it is proper to take judicial notice of facts with a "high degree of indisputability" that are "outside the area of reasonable controversy").

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff . . . ." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (internal quotation marks and citation omitted). A complaint is facially plausible when it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Twombly*, 550 U.S. at 570. This standard does not mandate probability, but rather "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction must include an inquiry by the court into its own jurisdiction." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[3] A "facial attack" on the complaint requires the court to take the allegations in the complaint as true and "merely [] look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 511. A "factual attack" allows the court to look beyond the pleadings and "weigh the evidence . . . as to the existence of its power to hear the case," which the plaintiff bears the burden of proving. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted).

## IV.    Argument

### A.    Plaintiffs Have Standing to Sue Sherriff Cunningham.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit cases submitted or decided prior to October 1, 1981.

Sheriff Cunningham argues that Plaintiffs do not meet the three requirements of Article III standing: injury-in-fact, traceability, and redressability. ECF 26 at 10–14. For the reasons discussed below, Plaintiffs readily meet each of these requirements.

Defendant Cunningham argues that Plaintiffs have failed to allege a sufficient injury-in-fact because they have failed to allege a credible threat of prosecution. ECF 26 at 12.

An injury-in-fact exists—even in the absence of prior enforcement—if a plaintiff faces a credible threat of prosecution. *Georgia Latino Alliance for Human Rights v. Gov.*, 691 F.3d 1250, 1257–58 (11th Cir. 2012); *see also ACLU v. Fla. Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993) (explaining that a plaintiff "does not have to expose himself to enforcement to be able to challenge the law") (citation omitted). A credible threat of prosecution exists where a plaintiff "seriously wishes to engage in expression that is *at least arguably forbidden* by the pertinent law . . . and . . . there is at least some minimal probability that the challenged rules will be enforced if violated." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) (citations and internal quotation marks omitted). Establishing a "minimal probability" of enforcement is a "low threshold" that requires a plaintiff to plead sufficient facts to demonstrate that the "probability that the challenged provisions . . . will be enforced" is more than "chimerical" or "imaginary or speculative." *Int'l Soc. for Krishna Consciousness v. Eaves*, 601 F.2d 809, 821 (5th Cir. 1979) (citations omitted). Courts assume a credible threat of prosecution where a plaintiff challenges "non-moribund[] statutes that facially restrict expressive activity." *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996); *Wilson v. State Bar*, 132 F.3d 1422, 1428 (11th Cir. 1998) (agreeing with standard articulated in *Gardner*).

Plaintiffs have alleged sufficient facts to demonstrate a credible threat of prosecution from the Sheriff because they wish to engage in prohibited speech and because there is at least a minimal

probability that the Sheriff will enforce the challenged statutes. Plaintiffs allege in their complaint that they have panhandled in the past to meet their basic needs and, despite fears of being prosecuted, will "continue to panhandle because they have no other way to" survive.  ECF 4 ¶ 16; *see also id.* ¶¶ 31–32, 36, 38, 42, 48; ECF 6-15 ¶¶ 3–5, 13; ECF 6-16 ¶¶ 4, 7; ECF 6-17 ¶¶ 6, 8. The Complaint also alleges that Defendant Cunningham enforces the Statutes and, in so doing, has criminalized the speech of people experiencing homelessness who panhandle. *See* ECF 4 ¶ 1.

In arguing that this Court lacks subject matter jurisdiction, Defendant Cunningham attached an affidavit stating that the "Montgomery County Sheriff's Office has never enforced these statutes or issued any citations to individuals for violating these statutes." Doc. 25 at 5 ¶ 5. Defendant Cunningham is incorrect. Plaintiffs have identified multiple occasions in which he has enforced the Pedestrian Solicitation Statute, *see* Potter Decl. ¶2, and "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (internal citation omitted).

Regardless, it would be inappropriate to require Plaintiffs to prove their case at the pleading stage. Rather, Plaintiffs' factual allegations must be accepted as true and all reasonable inferences drawn in their favor. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Plaintiffs need only plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of any necessary elements of their claims, *Watts v. Fla. Intern. Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007), and "no part of the *Twombly-Iqbal* pleading standard requires a plaintiff to provide *evidence* for the factual allegations in a complaint before they are 'entitled to the assumption of truth' at the motion-to-dismiss stage." *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1197 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679). Indeed, "[w]hen standing is questioned at the pleading stage, as it is here, 'general factual allegations of injury resulting from

the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006)) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). This Court, too, has explained that it is unnecessary to "parse" injury-in-fact, causation, and redressability "on a motion to dismiss" and may instead resolve "disputed facts" when there is "a solid record at the summary judgment juncture." *Doe v. Hobson*, 17 F. Supp. 3d 1141, 1151 (M.D. Ala. 2014).

Defendant Cunningham also stated in his affidavit that he has "no intention of ever enforcing these statutes in the future." Doc. 25 at 6 ¶ 7. In *Socialist Workers Party v. Leahy*, however, the Eleventh Circuit held that a plaintiff had standing to challenge a Florida law even though the Secretary of State stated that he would not enforce it against the plaintiff. The Court reasoned that a credible threat of prosecution remained given that the Secretary had continuing "authority to enforce" the challenged provision under state law, and the disavowal "would not bind future Secretaries of State." 145 F.3d 1240, 1246 (11th Cir. 1998). The same is true here, where Defendant is charged with enforcing the Statutes under Alabama law, *see* Ala. Code § 36-22-3(a)(4), and nothing in his affidavit precludes him (or future Sheriffs) from prosecuting Plaintiffs. Regardless, and as explained in more detail below, Defendant Cunningham's post-litigation assertions are more appropriately evaluated under the doctrine of voluntary cessation and mootness than standing. *Cf. Doe*, 17 F. Supp. 3d at 1149 (analyzing Defendants' non-enforcement argument as a question of voluntary cessation and mootness rather than standing).

Plaintiffs have also pleaded sufficient facts to demonstrate causation—the second prong of standing—because Plaintiffs' chilled speech is "fairly traceable to the operation of the statute." *Reproductive Health Servs. v. Strange*, 204 F. Supp. 3d 1300, 1318 (M.D. Ala. 2016) (citing

*Harrell*, 608 F.3d at 1253). The Court need not "know for certain how the [challenged laws] will be applied to fairly conclude that they chill [Plaintiffs'] speech." *Harrell*, 608 F.3d at 1260 n.7. Instead, it is Defendant Cunningham's authority to enforce the Statutes that causes "[P]laintiffs' realistic danger of sustaining direct injury as a result of [his] enforcement of the Act," which in turn deters their exercise of protected speech. *Strange*, 204 F. Supp. 3d at 1318.[4]

Defendant Cunningham asserts that traceability is not met because "the Sheriff and his office have not enforced these statutes in the past, and have no intention of enforcing these statutes in the future." ECF 26 at 12. But Defendant is wrong on the facts and the law. As to the facts, he has enforced at least one of the Statutes on multiple occasions. And his representations about future enforcement are not binding and do not deprive him of legal authority to enforce the laws at any time. The possibility of statutory enforcement against Plaintiffs still exists, and that "possibility is causing [Plaintiffs] to refrain from engaging in what they believe to be constitutionally protected speech." *Gbalazeh v. City of Dallas*, 394 F. Supp. 3d 666, 672 (N.D. Tex. 2019).[5]

Plaintiffs also meet the third and final prong of standing because their injuries—chilled and foregone speech—would be redressed by the requested declaration and an injunction preventing

---

[4] Defendant Cunningham also argues that Plaintiffs' injuries are not fairly traceable to his actions because he has no authority to enforce municipal ordinances. ECF. 26 at 12. This is a red herring. Plaintiffs are facially challenging the Pedestrian Solicitation and Begging Statutes and not the City of Montgomery's past enforcement of the ordinances incorporating those statutes into its city code.

[5] The two cases relied on by Sheriff Cunningham in support of traceability are readily distinguished. In *Doe v. Pryor*, the statute had not been enforced in "years and years" and the Attorney General conceded the statute was unconstitutional following the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003). 344 F.3d 1282, 1287–88 (11th Cir. 2003). By contrast, the Sheriff issued a citation under the Pedestrian Solicitation Statute as recently as November 2018 and has not conceded the statutes are unconstitutional. In *Lewis v. Governor of Alabama*, 944 F.3d 1287 (11th Cir. 2019), the Court held that the plaintiffs had no standing where "the Attorney General ha[d] no legal duty" to enforce the challenged law, the law itself did not "contemplate[] enforcement by the Attorney General," and the Attorney General had never "implement[ed] [the Act's] provisions . . . or even threatened to do so." *Id.* at 1298, 1300. Here, Plaintiffs have alleged a credible threat of prosecution based on Defendant's authority—and, indeed, "duty," Ala. Code § 36-22-3(a)—to enforce the statutes and have also provided examples of past enforcement.

enforcement of the challenged statutes. *See McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1318 n.2 (11th Cir. 2017) (concluding that where speech is chilled by the threat of criminal prosecution, "an injunction barring such prosecution would redress [Plaintiff's] injury"). The Eleventh Circuit has found redressability satisfied even where it was "unable to predict with certainty" what future injuries might be prevented by declaring a law unconstitutional. *Made in the USA Found. v. United States*, 242 F.3d 1300, 1311 (11th Cir. 2001). The requested relief would allow Plaintiffs to solicit without fear of arrest and prosecution from Defendant Cunningham.

### B. Sheriff Cunningham is Not Immune from Suit Under the Eleventh Amendment.

Defendant Cunningham makes two arguments about why the *Ex parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity does not apply. He argues that he lacks "the requisite connection with the enforcement of the panhandling statutes" to fall within the *Ex parte Young* exception. ECF 26 at 9. He also argues that the exception does not apply because Plaintiffs have failed to allege an "ongoing and continuous violation of federal law." ECF 26 at 6. For the reasons stated below, Defendant Cunningham falls squarely within this precedent. Moreover, his purported voluntary cessation does not moot this case.

### 1. Defendant Cunningham has a sufficient connection to the challenged statutes to fall within the *Ex parte Young* exception.

Defendant Cunningham argues that he does not have a sufficient connection to the challenged statutes to fit within the *Ex parte Young* exception. ECF 26 at 9. "[H]ornbook law that has been around for over 100 years" suggests otherwise. *Edwards v. Cofield*, 265 F. Supp. 3d 1344, 1345 (M.D. Ala. 2017).

*Ex parte Young* established that "a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green v. Mansour*, 474 U.S. 64, 68

(1985). That is because "an unconstitutional enactment is 'void' and therefore does not 'impart to [the officer] any immunity from responsibility to the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (quoting *Ex parte Young*, 209 U.S. at 160). Simply put, "[b]ecause the State is unable to authorize an unconstitutional action, its actor is 'stripped of his official or representative character and is subjected to the consequences of his official conduct.'" *Edwards*, 265 F. Supp. 3d at 1345–46 (citing *Ex parte Young*, 209 U.S. at 160). In those circumstances, a federal court may act to prevent "a continuing violation of federal law." *Green*, 474 U.S. at 68.

To be subject to the *Ex parte Young* exception to sovereign immunity, the state actor in question must have "'some connection' with the unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (quoting *Ex parte Young*, 209 U.S. at 157) (noting that being "responsible for law enforcement in th[e] state" and being "charged with executing the laws faithfully" is sufficient for establishing connection under *Ex parte Young*). To demonstrate this connection, the state officer must simply have "some responsibility to enforce the statute or provision at issue." *Summit Medical Assoc., P.C. v. Pryor*, 180 F. 3d 1326, 1341 (11th Cir. 1999).

Defendant Cunningham has a sufficient "connection to the enforcement of the challenged law" to be held liable under *Ex parte Young*. ECF 26 at 9-10 (citing *Summit*, 180 F.3d at 1341). Defendant Cunningham has a duty under Ala. Code § 36-22-3(a)(4) to enforce Alabama's criminal laws—including within the boundaries of the City of Montgomery. *See* Ala. Op. Att'y Gen. No. 98-00188, 1998 WL 35869489 at *2 (July 28, 1998) (duty extends to within city limits); *Walden v. State*, 426 So. 2d 515, 516–17 (Ala. Crim. App. 1982) ("In taking the oath of deputy sheriff these officers swore to perform these duties [contained within Ala. Code 36-22-3] for a deputy acts in the place and stead of the sheriff. We do not think the solemnity of such an oath is something

11

to be taken lightly or ignored altogether."). And the Sheriff has used that authority to enforce the Pedestrian Solicitation Statute on multiple occasions. *See* Potter Decl. ¶ 2. This is sufficient to fall under the *Ex parte Young* exception to sovereign immunity.

    **2.   Plaintiffs have sufficiently alleged an ongoing and continuous violation of federal law.**

Defendant Cunningham also argues that Plaintiffs do not fall within the *Ex parte Young* exception because Plaintiffs have failed to allege an "ongoing and continuous violation of federal law." Doc. 26 at 4. Defendant Cunningham is incorrect.

Evaluating whether a plaintiff has plausibly alleged an ongoing and continuous violation of federal law is a "straightforward inquiry" that requires a court to simply determine "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997). "This requirement does not mean that the enforcement of the allegedly unconstitutional state statute actually be in progress against the particular plaintiffs initiating the suit." *Summit*, 180 F.3d at 1338; *id.* at 1339 (prosecution need not be "initiated" or even "specifically threatened" to satisfy ongoing and continuous injury requirement). Rather, "the ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, *i.e.*, designed to prevent injury that will occur in the future, and cases where relief is retrospective." *Id.* at 1338.

Plaintiffs easily satisfy this requirement. Plaintiffs allege that Defendant Cunningham is engaging in "ongoing enforcement of state statutes prohibiting begging . . . and solicitation" and they seek "prospective relief" to enjoin their enforcement. Doc. 4 at ¶¶ 1–4, 56–57.

Defendant Cunningham argues that Plaintiffs cannot meet this straightforward inquiry because he has attached an affidavit stating that he has "no intention of ever enforcing these statutes

in the future." ECF 25 at 6 ¶ 7. However, the Eleventh Circuit has suggested that such assertions should be evaluated under the voluntary cessation doctrine rather than *Ex parte Young*. *See Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. Of Georgia*, 633 F.3d 1297, 1308–09 (11th Cir. 2011) (treating a dispute regarding whether the plaintiff alleged an ongoing violation as a mootness inquiry); *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (rejecting the contention that a non-moot claim did not meet the ongoing-violation requirement because that "theory, if accepted, would work an end-run around the voluntary-cessation exception to mootness where a state actor is involved"); *Russell v. Lundergan–Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy . . . *Ex parte Young*."); *see also Muhammad v. Crews*, No. 4:14CV379, 2016 WL 3360501, at *6 n.5 (N.D. Fla. June 15, 2016) (summarizing the case law).

   **3.  Plaintiffs' claims are not moot.**

   To the extent that Defendant Cunningham suggests that his affidavit moots Plaintiffs' claims, he is incorrect.

   Defendant bears "a heavy burden" of establishing that this case is moot. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (internal quotation marks and citation omitted). Voluntary cessation of a challenged activity—or, as in this case, "the decision not to initiate offensive conduct," *Hobson*, 17 F. Supp. 3d at 1153—does not moot a case unless the Court has "no reasonable expectation that the challenged practice will resume after the lawsuit is dismissed," *Walker v. City of Calhoun*, 901 F.3d 1245, 1270 (11th Cir. 2018) (quotation marks and internal citation omitted). In evaluating whether voluntary cessation moots a claim, a court must consider whether the governmental defendant's decision to voluntarily cease challenged

conduct (1) was "unambiguous"; (2) "resulted from substantial deliberation [and] is not merely an attempt to manipulate [] jurisdiction"; and (3) "has [been] consistently maintained." *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1257 (11th Cir. 2017) (internal citations omitted); *see also Rich v. Sec'y*, 716 F.3d 525, 531–32 (11th Cir. 2013).

The first factor—whether Defendant Cunningham's decision to stop enforcing the statutes was unambiguous—weighs in Plaintiffs' favor. Defendant's affidavit states that he has no current intention of enforcing these statutes. However, "[a] defendant's assertion that it has no *intention* of reinstating the challenged practice 'does not suffice to make a case moot' . . . ." *Sheely*, 505 F.3d at 1184 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (emphasis added)). This is especially so where the defendant has not disavowed the constitutionality of the challenged conduct. *See Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 277 F.3d 1322, 1323 n.1 (11th Cir. 2002) ("The City may not 'moot' an issue by making promises in legal briefs that it has ceased the activity in question, particularly when it continues to maintain the restriction is constitutional."), *vacated on other grounds*, 298 F.3d 1251 (11th Cir. 2002), *and on reh'g en banc*, 322 F.3d 1298 (11th Cir. 2003); *see also Knox v. Serv. Employees Int'l Union*, 567 U.S. 298, 307 (2012) ("[S]ince the union continues to defend the legality of the . . . fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future."); *Edwards*, 301 F. Supp. 3d at 1143 ("Defendants' refusal to admit any wrongdoing or concede that their prior practices were unconstitutional raises at least some concern that Defendants or their successors will revert to those prior practices after the conclusion of this litigation.").

Moreover, to render claims moot, a policy change must "reflect a rejection of the challenged conduct that is both permanent and complete." *Flanigan's*, 868 F.3d at 1257. However, there is no evidence that Defendant Cunningham's representations have been memorialized in a

written policy directive or guidance or even communicated to all employees at the sheriff's office. Indeed, he could change his mind or abandon his position at whim were this Court to dismiss the lawsuit. Indeed, Defendant's representations stand in stark contrast to the challenged ordinance in *Flanigan's*—an ordinance that was repealed in an open city council meeting following the same level of deliberation as any other policy change. 868 F.3d at 1260.

The second factor—whether voluntary cessation "resulted from substantial deliberation"— also weighs in Plaintiffs' favor. *Id.* at 1256. In assessing whether the change resulted from substantial deliberation, courts "examine the timing of the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it." *Id.* at 1257. Defendant's first and only public statement that he intends not to enforce the Statutes was made *after* Plaintiffs filed this case in an affidavit supporting his Motion to Dismiss. ECF 25 at 6, ¶ 7. The Sheriff took unilateral action in making that statement, "a relatively easy step" compared to engaging in "substantial deliberation," and therefore one that cuts against a finding of mootness. *Edwards*, 301 F. Supp. 3d at 1142; *c.f. Hill v. City of Homestead*, 2020 WL 1077545, at *5 (S.D. Fla. Mar. 6, 2020) (noting that a formal resolution, passed two years prior to the lawsuit, "reflects the considered judgment of a deliberative body" and is indicative of "substantial deliberation").

Finally, the third *Flanigan's* factor—consistent maintenance of a commitment to the new policy—neither weighs in favor nor against a finding of mootness. *Flanigan's*, 868 F.3d at 1257. As Defendant Cunningham just announced his new policy and Plaintiffs have had no opportunity for discovery, this Court cannot evaluate whether Defendant Cunningham has stopped enforcing the state statutes (nor has enough time passed to allow such a review to be meaningful). Regardless, Defendant Cunningham's "remedial steps—which consist entirely of [his] unilateral actions and statements—pale in comparison to the steps taken by the defendant in *Flanigan's Enterprises*."

*Edwards*, 301 F. Supp. 3d at 1144 (internal citations omitted). And while the lack of a record to review "does not weigh against a finding of mootness in this case, it also does not weigh in favor of such a finding." *Id.*[6]

### C. Plaintiffs are Entitled to Declaratory and Injunctive Relief.

Defendant Cunningham asserts that Plaintiffs have failed to allege a sufficient "case of an actual controversy" under the Declaratory Judgment Act because Plaintiffs claims are grounded in the remote possibility of future injury. ECF 26 at 14 (citing 28 U.S.C. § 2201).

The Declaratory Judgment Act "echo[es] the 'case or controversy' requirement of article III of the Constitution." *Emory v. Peeler*, 756 F.2d 1547 (11th Cir. 1985). Under the Declaratory Judgment Act, the question "is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

---

[6] Defendant misapplies a series of cases to argue that Plaintiffs cannot satisfy *Ex parte Young* because there is no ongoing and continuous violation of federal law. ECF 26 at 7–9. These cases are readily distinguishable because—unlike here—the alleged violations in those cases had definitively ended. *See Cassells v. Hill*, 2010 WL 4616573 (N.D. Ga. Nov. 8, 2010) (defendant replaced by a new sheriff who formally rescinded the challenged policies); *Clark v. DiNapoli*, 510 F. App'x 49, 51 (2nd Cir. 2013) (plaintiff received a post-deprivation hearing, curing any due process violation); *Duke v. Hamil*, 997 F. Supp. 2d 1291, 1298 (N.D. GA. 2014) (plaintiff resigned and was no longer subject to the defendant-employer's authority). And in *281 Care Comm. v. Arneson*, the Eighth Circuit held that there was no ongoing violation at the *summary judgment stage* because the Attorney General firmly "established" her unwillingness to prosecute plaintiffs "based upon any of the activities in which the parties wish to engage." 766 F.3d 774, 768, 797 (8th Cir. 2014). Here, by contrast, the threat of future enforcement is ongoing because Defendant Cunningham has a statutory duty to enforce the state statutes; continues to defend their constitutionality; and has not unambiguously and permanently ended their enforcement.

[7] Defendant also asserted in his motion that Plaintiffs' claims are barred by *Younger v. Harris*, 401 U.S. 37 (1971) and the *Rooker-Feldman* doctrine but make no reference to these arguments in his brief. The Eleventh Circuit has "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (collecting cases); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir.1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citing *Cont'l. Tech Serv., Inc. v. Rockwell Int'l. Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)). Regardless, neither *Younger* abstention nor *Rooker-Feldman* bars Plaintiffs' claims for the reasons stated in their response to Defendant Taylor's motion to dismiss. *See* ECF 35.

declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Where "compliance [with the challenged laws] is coerced by the threat of enforcement," there is a justiciable controversy for purposes of the Declaratory Judgment Act. *Lake Carriers' Ass'n*, 406 U.S. *v. MacMullan*, 406 U.S. at 509; *see also Blue Cross & Blue Shield v. Peacock's Apothecary, Inc.*, 567 F. Supp. 1258, 1269–70 (N.D. Ala. 1983) (noting that parties may have a justiciable controversy "even though [the Defendant] has [not] attempted to enforce the Act against plaintiff").

For the reasons discussed in Parts IV-A and B above in relation to standing and sovereign immunity, there is a clear threat of actual injury and ongoing controversy sufficient to create a "justiciable controversy" between the Sheriff and Plaintiffs to satisfy the requirements of the Declaratory Judgment Act.

And for the reasons asserted in Plaintiffs' preliminary injunction motion, ECF 6, as well as those in Part IV-A *supra*, Plaintiffs are entitled to injunctive relief against Sheriff Cunningham. While "injunctions regulate future conduct only," Plaintiffs have alleged sufficient facts supporting the threat of future harm from Defendant to seek injunctive relief. ECF 26 at 14–16; *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014).[7]

## V. Conclusion

---

[7] Defendant also asserted in his motion that Plaintiffs' claims are barred by *Younger v. Harris*, 401 U.S. 37 (1971) and the *Rooker-Feldman* doctrine but make no reference to these arguments in his brief. The Eleventh Circuit has "long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (collecting cases); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir.1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citing *Cont'l. Tech Serv., Inc. v. Rockwell Int'l. Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)). Regardless, neither *Younger* abstention nor *Rooker-Feldman* bars Plaintiffs' claims for the reasons stated in their response to Defendant Taylor's motion to dismiss. *See* ECF 35.

For the foregoing reasons, this Court has jurisdiction over this case and should deny Defendant Cunningham's Motion to Dismiss.

Dated: August 11, 2020                           Respectfully submitted,

                                                 /s/ Micah West_____
                                                 *On Behalf of Plaintiffs' Counsel*

                                                 Micah West, ASB-1842-J82F
                                                 Ellen Degnan, ASB-3244-I12V
                                                 SOUTHERN POVERTY LAW CENTER
                                                 400 Washington Avenue
                                                 Montgomery, AL 36104
                                                 T: (334) 956-8200
                                                 F: (334) 956-8481
                                                 E: ellen.degnan@splcenter.org
                                                 E: micah.west@splcenter.org

                                                 Clara Potter* (La. Bar No. 38377)
                                                 SOUTHERN POVERTY LAW CENTER
                                                 201 St. Charles Avenue, Suite 2000
                                                 New Orleans, LA 70170
                                                 T: (504) 486-8982
                                                 F: (504) 486-8947
                                                 E: clara.potter@splcenter.org

                                                 Randall C. Marshall, ASB-3023-A56M
                                                 ACLU FOUNDATION OF ALABAMA
                                                 P.O. Box 6179
                                                 Montgomery, AL 36106
                                                 T: (334) 265-2754
                                                 E: rmarshall@aclualabama.org

                                                 Tristia Bauman* (D.C. Bar No. 1016342)
                                                 NATIONAL   LAW   CENTER   ON
                                                 HOMELESSNESS AND POVERTY
                                                 2000 M Street NW, Suite 210
                                                 Washington, D.C., 20036
                                                 T: (202) 638-2535
                                                 F: (202) 638-2737
                                                 E: tbauman@nlchp.org

                                                 * *admitted pro hac vice*
                                                 **Attorneys for Plaintiffs**

18

**CERTIFICATE OF SERVICE**

I hereby certify that as of this date the following was filed through the Court's CM/ECF

filing system, and by virtue of this filing, notice will be sent electronically to all counsel of

record, including:

James W. Davis
Jeremy S. Weber
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36130

Constance C. Walker
Thomas T. Gallion, III
HASKELL SLAUGHTER
GALLION & WALKER, LLC
8104 B Seaton Place
Montgomery, Alabama 36116

Robert D. Segall
Shannon L. Holliday
Wallace D. Mills
Copeland Franco Screws & Gill P.A.
444 South Perry Street
Montgomery, AL 36104

DATED this August 11, 2020.

/s/ Micah West
Micah West