IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN SINGLETON, RICKY VICKERY, and MICKI HOLMES, on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-99-WKW [WO] |
| HAL TAYLOR, in his official capacity as Secretary of the Alabama Law Enforcement Agency, and DERRICK CUNNINGHAM, in his official capacity as Sheriff for Montgomery County, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jonathan Singleton, Ricky Vickery, and Micki Holmes are residents of Montgomery, Alabama, who are homeless.  They bring suit pursuant to 42 U.S.C. § 1983 to challenge the constitutionality of two Alabama statutes: Alabama Code § 13A-11-9(a)(1) (prohibiting loitering "in a public place for the purpose of begging") and Alabama Code § 32-5A-216(b) (prohibiting individuals from "stand[ing] on a highway for the purpose of soliciting . . . contributions").  Plaintiffs assert that the two challenged laws have criminalized their speech in violation of the First Amendment to the United States Constitution.  Remaining defendants are

Derrick Cunningham, the Sheriff of Montgomery County, who is sued in his official capacity; and Hal Taylor, Secretary of the Alabama Law Enforcement Agency, also sued in his official capacity.

Defendants Taylor and Cunningham have moved for dismissal under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  (Docs. # 22, 25.)  For the reasons given below, Defendants' motions to dismiss are due to be denied.

## I.    JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).  Personal jurisdiction and venue are uncontested.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (alteration in original) (citation omitted).

As noted above, Defendants also move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction under Rule 12(b)(1). A motion under Rule 12(b)(1) can present either a facial or a factual attack to the court's jurisdiction. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). When resolving a facial attack under Rule 12(b)(1), as when resolving a Rule 12(b)(6) motion, the court must assume the truth of the allegations in the complaint. *See id.* If the motion instead depends on the resolution of disputed facts, however, the court must provide the parties an opportunity for discovery and a hearing before deciding the motion. *See id.*

## III.   BACKGROUND

Plaintiffs Jonathan Singleton, Ricky Vickery, and Micki Holmes are residents of Montgomery, Alabama. All three are homeless and rely on panhandling—

3

"soliciting donations in public spaces from others"—to survive.  (Doc. # 35, at 3.)[1] Their typical signs read "homeless," "homeless and hungry," and "HOMELESS. Today it is me, tomorrow it could be you."  (Doc. # 4, at 7–8.)

Plaintiffs bring suit, pursuant to 42 U.S.C. § 1983, to challenge the constitutionality of two Alabama statutes:  Alabama Code § 13A-11-9(a)(1) (prohibiting loitering "in a public place for the purpose of begging") (hereinafter "the Begging Statute") and Alabama Code § 32-5A-216(b) (prohibiting individuals from "stand[ing] on a highway for the purpose of soliciting . . . contributions") (hereinafter "the Solicitation Statute").  Plaintiffs assert that the two challenged laws (together, "the Statutes") have criminalized their speech in violation of the First Amendment to the United States Constitution, including through their incorporation into Montgomery's municipal code.  They further assert that have been arrested or cited for panhandling under the Solicitation Statute, ticketed under the Begging Statute, and threatened with arrest by police on several occasions.[2]

Plaintiffs allege that Defendants are tasked with the enforcement of Alabama's criminal statutes.  (*See* Doc. # 4, at 3 (¶¶ 11–12); *see also* Doc. # 35,

[1] References to document numbers ("Doc. #") are to the document numbers of the pleadings, motions, and other materials in the court record as compiled and designated on the docket sheet by the Clerk of the Court. Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system.

[2] Plaintiffs seek the certification of a class of individuals similarly situated.  (*See* Doc. # 54.)  The motion is pending.

at 3–4 (describing Secretary Taylor's authority and duty to enforce the Statutes); Doc. # 44, at 7–8 (discussing Sheriff Cunningham's enforcement of the Solicitation Statute).)

## IV.   DISCUSSION

Defendants Taylor and Cunningham move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), raising challenges to this court's subject matter jurisdiction and to the sufficiency of Plaintiffs' claims.  These arguments, as raised in Defendants' motions to dismiss, are:

1. The court should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971);

2. Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, which provides that federal district courts lack authority to review the final judgments of state courts, *see, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005);

3. Plaintiffs lack standing to request relief because, among other issues, they have not demonstrated that their injuries are traceable to Defendants;

4. Defendants are immune from suit under the Eleventh Amendment to the United States Constitution; and

5. Plaintiffs have failed to state a plausible claim for relief against Defendant Cunningham.[3]

For the reasons detailed below, Defendants' motions to dismiss are due to be denied.

### 1. *Younger* **Abstention**

Defendants suggest that the court should abstain from exercising jurisdiction over Plaintiffs' claims because relevant proceedings are ongoing in state court.[4] (*See, e.g.*, Doc. # 23, at 10–11.)  Defendants note that several municipal court cases remain open under the municipal incorporation of the statute at issue here.  (Doc. # 23, at 11 (asserting that at least sixteen relevant cases remain open in municipal court).)   But, contrary to Defendants' arguments, *Younger* abstention is not warranted.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  As a general matter, "federal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important

---

[3] Defendant Taylor's motion to dismiss does not assert that Plaintiffs have failed to plausibly allege their claims.  (*See generally* Doc. # 22.)

[4] Unlike several of the other issues raised by Defendants, *Younger* abstention is not jurisdictional.  *See, e.g.*, *Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1254 (11th Cir. 2018).

countervailing interest." *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (citation and internal quotation marks omitted); *see also Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1254 (11th Cir. 2018) (observing that "[a]bstention . . .  has become disfavored in recent Supreme Court decisions").  Still, the abstention doctrine of *Younger v. Harris* "restrain[s] courts of equity from interfering with criminal prosecutions . . . ." *Younger v. Harris*, 401 U.S. 37, 44 (1971).  Under *Younger*, "absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1262 (11th Cir. 2004) (citation and internal quotation marks omitted).  "Federal courts have consistently recognized this limitation on enjoining state criminal prosecutions unless one of a few narrow exceptions is met." *Id.* at 1263.

As a threshold matter, *Younger* abstention is clearly inappropriate as to the Begging Statute.  Plaintiffs have no open municipal court cases involving the Begging Statute, and *Younger* abstention requires a pending proceeding.  (*See, e.g.*, Doc. # 35, at 14–15; Doc. # 36, at 10.)  *See also Walker*, 901 F.3d at 1254.  For the reasons described below, it is also inappropriate as to the Solicitation Statute.

To begin, it is not clear that *Younger* even applies in the instant context.  First, "[t]he *Younger* Court held that federal courts should abstain from suits aimed at restraining *pending* state criminal prosecutions." *For Your Eyes Alone, Inc. v. City*

7

*of Columbus, Ga.*, 281 F.3d 1209, 1216 (11th Cir. 2002) (emphasis added).

Defendants have not established that the adjudication of the instant claims would

"represent[ ] . . . the interference with ongoing judicial proceedings against which

*Younger* was directed . . . ."  *New Orleans Pub. Serv., Inc. (NOPSI) v. Council of*

*City of New Orleans*, 491 U.S. 350, 372, (1989).  Most notably, Plaintiffs' suit

explicitly seeks only forward-looking relief, not a restraint on open criminal

proceedings.  (*See* Doc. # 35, at 16 (noting that "all three Plaintiffs are seeking

wholly prospective relief").)   In contrast, Plaintiffs do not appear to seek an

injunction against pending prosecutions.  *Cf. Allee v. Medrano*, 416 U.S. 802, 817

n.11 (1974) (noting, as an indication that *Younger* did not apply, that "no injunctive

relief against pending prosecutions was ever requested"); *The News-J. Corp. v.*

*Foxman*, 939 F.2d 1499, 1507 (11th Cir. 1991) (describing the *Younger* inquiry as

whether federal courts should "intervene in an ongoing state criminal prosecution").

That distinction places this case far from the heartland of *Younger*.  *See generally*

*Wooley v. Maynard*, 430 U.S. 705, 711 (1977) ("[T]he suit is in no way designed to

annul the results of a state trial since the relief sought is wholly prospective, to

preclude further prosecution under a statute alleged to violate appellees'

constitutional rights." (internal quotation marks omitted)); *31 Foster Children v.*

*Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003) ("If there is no interference, then abstention is not required.").

In any case, and maybe more importantly, the Supreme Court has emphasized that *Younger* abstention should not stand in the way of facial challenges to unconstitutional statutes. *See NOPSI*, 491 U.S. at 372 ("As a challenge to completed legislative action, NOPSI's suit represents neither the interference with ongoing judicial proceedings against which *Younger* was directed . . . . It is, insofar as our policies of federal comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance—*which we would assuredly not require to be brought in state courts*." (emphasis added)); *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) (observing that an injunction that "strike[s] down a single state statute, either on its face or as applied," would not run afoul of *Younger*). The fact that a suit involves a criminal statute, and that its resolution would thereby enjoin *future* prosecutions involving that same statute, is not enough to justify *Younger* abstention. *Cf. Robinson v. Stovall*, 646 F.2d 1087, 1090–91 (5th Cir. Unit A June 1981[5]) ("[Plaintiffs] seek only prospective relief[,] an injunction against future arrests or harassment, and a declaratory judgment that

---

[5] Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this court is bound by cases decided by the former Fifth Circuit prior to October 1, 1981.

the first amendment protects their right to stage further marches without complying with the parade ordinance.  Such relief will affect the pending Okolona prosecutions, if at all, only through the operation of ordinary principles of collateral estoppel.  The Supreme Court's decisions on point make it clear that such an attenuated impact cannot be the basis for Younger abstention.").[6]

In the alternative, even if it is assumed that the general context here would typically call for *Younger* abstention, declining jurisdiction is not appropriate.  First, as Defendants seemingly acknowledge, any pending *municipal* prosecution involves a different law than the one at issue here: the municipal ordinance that incorporates the relevant State laws.  (*See, e.g.*, Doc. # 36, at 8.)  Though the State statute is incorporated directly by the relevant local ordinance, the laws are distinct.  In such circumstances, the Eleventh Circuit has suggested that abstention is improper.  *Cf. Redner v. Citrus Cnty., Fla.*, 919 F.2d 646, 651 (11th Cir. 1990) (deeming abstention inappropriate where state criminal proceedings dealt with a distinct, though closely related, ordinance, meaning that the relevant "state criminal proceedings could

---

[6] Instead, paradigmatic cases of *Younger* abstention involve situations like internal discipline at a state agency, *see Rizzo v. Goode,* 423 U.S. 362 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) (describing a requested injunction that "contemplate[d] interruption of state proceedings" and an "ongoing federal audit of state criminal proceedings"); s*ee generally Wexler v. Lepore*, 385 F.3d 1336, 1339 (11th Cir. 2004) (collecting cases).  "[I]t has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding reviewing legislative or executive action.  Such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."  *NOPSI*, 491 U.S. at 368.

proceed to completion . . . without a state court addressing Ordinance 88–06"); *cf.* *Costello v. Feagin*, 50 So. 134, 135 (Ala. 1909) ("The offenses against the corporation and the state . . . are distinguishable, and wholly disconnected . . . .").

Further, *Younger* abstention is improper where a plaintiff cannot obtain an adequate remedy in state court. *31 Foster Children*, 329 F.3d at 1279  (stating that plaintiffs facing *Younger* abstention must "demonstrat[e] that the state remedies are inadequate" to prevent it under this exception (citation omitted)).  Of course, "[i]n determining whether the state remedies are adequate, . . . [t]he relevant question is not whether the state courts can do all that Plaintiffs wish they could," but rather whether available remedies are sufficient. *Id.* (second alteration in original) (citation and internal quotation marks omitted).   Because the municipal prosecutions allegedly involve a municipal ordinance, the remedies sought in this court—or, indeed, any remedy against the *State statute* challenged here—are not available in the pending state proceedings.  And Plaintiffs also assert, and Defendants apparently do not deny, that the municipal court cannot issue an injunction.  (*See, e.g.*, Doc. # 36, at 9 (noting only that plaintiffs' argument that they cannot receive injunctive relief in municipal court is "irrelevant").)  *See also* Ala. Code § 12-14-10 (describing the powers of municipal courts, a list that does not include injunctive relief); Ala. Code § 6-6-500 ("Injunctions may be granted, returnable into any of the circuit

courts in this state, by the judges of the *supreme court, court of civil appeals, court of criminal appeals, and circuit courts*." (emphasis added)).

This discrepancy prevents abstention where, as here, the potential dismissal of an existing charge because of a constitutional *defense*—as compared to a prospective injunction—does not provide a sufficient remedy. *Cf. Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) (describing the risk that a plaintiff will be "chilled from exercising her right to free expression or forgo[] expression in order to avoid enforcement consequences"); *see generally For Your Eyes Alone, Inc.*, 281 F.3d at 1219 ("Our decision also is marked by concern over the costs of abstention in a suit where the plaintiff brings a facial or as-applied challenge to a state statute on First Amendment free speech grounds.").[7]  For this reason, too, the court declines to abstain.  *Cf. Gbalazeh v. City of Dallas, Texas*, 394 F. Supp. 3d 666, 670 (N.D. Tex. 2019) (Godbey, J.) (noting, as a reason not to abstain under *Younger*, that Dallas municipal courts cannot issue injunctive relief).

## 2.  **The *Rooker-Feldman* Doctrine**

Defendants also contend that the *Rooker-Feldman* doctrine strips this court of subject matter jurisdiction.  For the reasons below, they are incorrect; jurisdiction over Plaintiffs' constitutional claims is appropriate.

---

[7] The risk of chilled expression, which also relates to the standing inquiry, is discussed in greater detail below.

"The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (citation and internal quotation marks omitted).  The doctrine prevents district courts from reviewing state-court judgments and thereby ensures that appellate jurisdiction to "reverse or modify a state-court judgment is lodged . . . exclusively in" the Supreme Court.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).  Put another way, the *Rooker-Feldman* doctrine ensures that "a federal district court cannot entertain an original action alleging that a state court violated the Constitution by giving effect to an unconstitutional state statute."  *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 370 n.16 (1990).

"*Rooker-Feldman* is a narrow jurisdictional doctrine." *Behr v. Campbell*, No. 18-12842, 2021 WL 3559339, at *1 (11th Cir. Aug. 12, 2021).  *Rooker-Feldman* "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection *of those judgments*."  *Exxon Mobil Corp.*, 544 U.S. at 284 (emphasis added); *see also Behr*, 2021 WL 3559339, at *1 (The *Rooker-*

*Feldman* doctrine "simply establishes that a party who loses a case in state court cannot appeal that loss in a federal district court."); *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (noting that *Exxon Mobil* "pared back the *Rooker-Feldman* doctrine to its core").

Here, the claims at issue clearly do not satisfy the requirements of *Rooker-Feldman*.  The injury at issue is caused not by a state-court *judgment* but by a state law, and Plaintiffs do not seek review of any state-court judgment.

Nonetheless, Defendants argue that the *Rooker-Feldman* doctrine extends "beyond claims actually adjudicated by the state court to include claims that are 'inextricably intertwined' with a state court judgment."  *Bell v. Perkins*, 305 F. App'x 569, 570 (11th Cir. 2008) (per curiam) (citation omitted).  (*See also* Doc. # 23, at 14.)  But as the Eleventh Circuit has reiterated, "*Rooker-Feldman* does not prohibit a 'district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.'"  *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009) (quoting *Exxon Mobil Corp.*, 544 U.S. at 293).  More importantly, earlier this month, the Eleventh Circuit made clear that such a broad formulation of the *Rooker-Feldman* doctrine cannot survive *Exxon Mobil*.  The Eleventh Circuit tolled the death knell to the *Rooker-Feldman* doctrine's "era of expansion."  *Behr*, 2021 WL 3559339, at *1; *id.*

at *5 ("In short, district courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply.").  In *Behr*, the court vetoed the very argument that Defendants advance here: Post-*Exxon Mobil*, "[p]arties keep arguing" erroneously "that district courts should dismiss claims as 'inextricably intertwined' even when those claims do not seek 'review and rejection' of a state court judgment, and district courts keep doing so."  *Id.* at *4 (citation omitted).  However, "considering whether a claim is 'inextricably intertwined' with a state court judgment . . . is merely a way of ensuring that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment."  *Id.* at *4 (citation omitted).  Here, where the issue overlaps but no state-court *judgment* is at issue, *Rooker-Feldman* does not apply.[8]  *See generally Skinner v. Switzer*, 562 U.S. 521, 532 (2011) ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." (citation and internal quotation marks omitted)).

---

[8] The Eleventh Circuit and the United States Supreme Court have repeatedly affirmed this general principle.  *See, e.g.*, *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1263 (11th Cir. 2012) (acknowledging that "the existence of a state court judgment interpreting or relying upon a statute does not bar a federal court from entertaining an independent challenge to the constitutionality of that statute," but dismissing an as-applied procedural due process challenge); *Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

Indeed, *Feldman* itself helps explain the relevant distinction. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). There, two plaintiffs had petitioned the District of Columbia Court of Appeals to waive a court Rule; their request was denied, and they filed federal suits seeking review. *See id.* at 465–473. The Supreme Court held that the denials themselves could not be reviewed by the federal district court. *Id.* at 482. But it also allowed a challenge as to the validity of the underlying Rule. *See id.* at 486. As the Supreme Court later summarized, "[t]he Rule could be contested in federal court . . . so long as plaintiffs did not seek review of the Rule's application in a particular case." *Exxon Mobil Corp.*, 544 U.S. at 286 (citing *Feldman*, 406 U.S. at 486). As relevant here, Plaintiffs' claims mirror the surviving challenges of the *Feldman* plaintiffs, focusing on the constitutionality of the law underpinning a possible state-court judgment.[9] *Cf. Doe v. Fla. Bar*, 630 F.3d 1336, 1341 (11th Cir. 2011).

In summary, the Supreme Court and the Eleventh Circuit have reiterated the "narrow ground" covered by *Rooker-Feldman*. *Exxon Mobil Corp.*, 544 U.S. at 284; *see also Lance*, 546 U.S. at 466 ("The doctrine applies only in limited circumstances where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." (internal citation and quotation marks omitted)); *Behr*,

---

[9] On this point, Plaintiffs aptly summarize, writing that "their claims seek to facially invalidate and proscribe future enforcement of two state statutes." (Doc. # 35, at 13.)

2021 WL 3559339, at *7 ("*Rooker-Feldman* is not a jurisdictional giant. It is a limited doctrine that applies only when litigants try to appeal state court losses in the lower federal courts."). This court heeds those words. Plaintiffs' claims survive.

### 3. **Standing**

Defendants also argue that Plaintiffs lack standing to bring their claims. But Plaintiffs have clearly established, at this stage, the requisites for standing.

"Standing is a jurisdictional prerequisite to suit in federal court." *State of Ala. v. U.S. E.P.A.*, 871 F.2d 1548, 1554 (11th Cir. 1989) (citation omitted). To establish that they meet the constitutional requirements for standing, plaintiffs must allege an (1) "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable" to the challenged act; and (3) that it is "likely, as opposed to merely speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up); *Collier v. Buckner*, 303 F. Supp. 3d 1232, 1250 (M.D. Ala. 2018) (Watkins, J.) (reviewing requirements for Article III standing). These requirements are "somewhat more lenient" in the First Amendment context. *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 883 (11th Cir. 2000). Further, because the issue is raised

17

on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing." *Id.* at 878.

Plaintiffs have satisfied all three requirements.  First, they have demonstrated an injury in fact.  Plaintiffs have established, at this stage, that the laws challenged here implicate speech interests protected by the First Amendment.  *See, e.g.*, *Smith v. City of Fort Lauderdale, Fla.*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection."). In such a circumstance, even if a plaintiff has not directly suffered from enforcement of a law, that "plaintiff has standing if he demonstrates a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." *Jacobs v. The Fla. Bar*, 50 F.3d 901, 904 (11th Cir. 1995) (cleaned up).  Standing therefore exists "when the plaintiff has submitted evidence indicating an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and *there exists a credible threat of prosecution.*"  *Wilson*, 132 F.3d at 1428 (citation and internal quotation marks omitted) (emphasis in original) (discussing standing at the summary judgment stage); *see also Bischoff*, 222 F.3d at 884 (noting that a threat of arrest "for engaging in free speech activities is evidence of an actual and concrete injury wholly adequate to satisfy the injury in fact

requirement of standing"); *Parker v. Jud. Inquiry Comm'n of Alabama*, No. 2:16-CV-442-WKW, 2017 WL 3820958, at *4 (M.D. Ala. Aug. 31, 2017) (Watkins, J.).

At this stage, plaintiffs have met their burden as to an injury in fact: they have adequately demonstrated "some possibility that the defendants will seek to enforce the challenged regulation." *ACLU v. The Fla. Bar*, 999 F.2d 1486, 1494 (11th Cir. 1993). Plaintiffs' allegations indicate that Defendants have legal authority to enforce the Statutes and that Defendants have enforced at least one of the Statutes, if not both.[10] (*See, e.g.*, Doc. # 44, at 8, 10.) As the Supreme Court has noted, "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (citation and internal quotation marks omitted).

All in, plaintiffs have undoubtedly shown "an actual and well-founded fear that the law will be enforced against them." *Id.* at 160 (citation and internal quotation marks omitted). Plaintiffs "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 15 (2010) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)); *see generally For Your Eyes Alone, Inc.*, 281 F.3d at 1219 ("Uncertainty as to the

---

[10] The parties dispute whether, and how often, the Statutes have been enforced by each Defendant. The court need not reach this issue at this stage, including because past enforcement is not a requirement for Plaintiffs to have standing.

constitutionality of the statute at issue, or as to the conduct of the state agents implementing the statute, can in itself chill future speech."). At this stage, it is enough that the realistic possibility of enforcement is causing plaintiffs to refrain from expression that is, they argue, constitutionally protected. *See, e.g.*, *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) ("[A]n actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." (citation omitted)).

Defendants assert that they do not plan to enforce the relevant statutes—and have never done so—and that these promises undermine Plaintiffs' standing. (*See, e.g.*, Doc. # 25, at 6 (noting that the Montgomery County Sheriff's Office "does not enforce these statutes" and has "no intention of ever enforcing these statutes").) Setting aside that Plaintiffs' allegations are enough to overcome this assertion, and ignoring whether the statement is true, Defendants' declaration is insufficient: "Mid-litigation assurances are all too easy to make and all too hard to enforce, which probably explains why the Supreme Court has refused to accept them." *W. Alabama Women's Ctr. v. Williamson*, 900 F.3d 1310, 1328 (11th Cir. 2018).[11]  Perhaps

---

[11] Similarly, these assurances do not render Plaintiffs' claims moot. *See, e.g.*, *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) ("A defendant's assertion that it has no intention of reinstating the challenged practice does not suffice to make a case moot." (citation and internal quotation marks omitted)); *Jager v. Douglas Cnty. Sch. Dist.*, 862 F.2d 824, 833 (11th Cir. 1989) ("Ordinarily, the defendant's voluntary cessation of a challenged practice will not moot an action because the defendant is free to return to his old ways." (citation and internal

unsurprisingly, the Eleventh Circuit has found a credible threat of prosecution even where relevant actors had "disavow[ed] their authority to enforce" the requirements at issue. *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998).

The latter two standing requirements, causation and redressability, are also met. Plaintiffs have shown that the alleged injury is traceable to the challenged acts: the Statutes' prohibitions are clearly the cause of any chilled speech, and defendants are tasked with enforcing them. *Cf. McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1318 n.2 (11th Cir. 2017) (noting that, where a plaintiff was forced to choose between foregoing protected speech or risking prosecution, that injury was directly traceable to threatened prosecution); *see also Parker*, 2017 WL 3820958, at \*5 ("What matters is whether the Attorney General has the power to enforce the challenged provision against the plaintiff." (citation and quotation marks omitted)). Enjoining future prosecution under those statutes would, therefore, redress the alleged injury. *See McDonough*, 862 F.3d at 1318 n.2. At this stage, the court is satisfied that the minimum requirements for Article III standing are met.[12]

---

quotation marks omitted)); *id.* at 834 (noting that voluntary cessation is particularly unconvincing when defendants "continue to press . . . that the voluntarily ceased conduct should be declared constitutional").

[12] For the same reasons described above, plaintiffs have also, at this stage, satisfied the requirements of the Declaratory Judgment Act, which "provides that a declaratory judgment may only be issued in the case of an actual controversy." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. 2019) (citation and internal quotation marks

### 4. **Eleventh Amendment Immunity**

In addition, Defendants assert that they are immune from suit by the protections of Eleventh Amendment immunity. (*See, e.g.*, Doc. # 23, at 16; Doc. # 26, at 3.) They are again incorrect.

In general, "[b]ecause of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citation omitted). But "[t]he landmark case of *Ex parte Young* created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Id.* (internal citation omitted) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). "Under the legal fiction . . . when a state official violates federal law, he is stripped of his official or representative character and no longer immune from suit." *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1288 (11th Cir. 2015). When this exception applies, the relevant official is not immune from suit. *See id.*

---

omitted); *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 508 (1972) (finding an actual controversy where "compliance is coerced by the threat of enforcement").

In light of "the important interests of federalism and state sovereignty" that it implicates, the *Ex parte Young* exception is limited to certain contexts. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Specifically, the doctrine only applies if the complaint (1) alleges an ongoing and continuous violation of federal law, *see id.,* and (2) requests relief that can be characterized as "prospective," *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted); *see also Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (citation and internal quotation marks omitted)).[13]

The complaint clearly satisfies this inquiry. It alleges an ongoing and continuous violation: "where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied." *Summit Med. Assocs., P.C.*, 180 F.3d at 1338.[14] This case—where

---

[13] Notably, as the Court held in *Verizon Maryland, Inc.*, "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." 535 U.S. at 646.

[14] Importantly, the threat of potential enforcement need not be imminent. *See Summit Med. Assocs.*, 180 F.3d at 1338 ("Appellants contend . . . that under *Ex parte Young,* a state officer's enforcement of an allegedly unconstitutional state law must be *imminent,* not merely threatened. We decline to adopt so limited a view of the *Ex parte Young* doctrine."). Moreover,

Plaintiffs risk prosecution, and associated fines or incarceration, barring court intervention—meets this standard. *See generally id.* ("[T]he ongoing and continuous requirement merely distinguishes between cases where the relief sought is prospective in nature, *i.e.,* designed to prevent injury that will occur in the future, and cases where relief is retrospective."); *Braggs v. Dunn*, 383 F. Supp. 3d 1218, 1244 (M.D. Ala. 2019) (Thompson, J.) ("[T]he court must answer the question whether the plaintiffs face a threat of being subjected in the future to the challenged prison conditions that may be remedied by prospective relief.").   And Plaintiffs clearly seek prospective relief.  (*See* Doc. # 4, at 15–16; Doc. # 35, at 4 ("Plaintiffs seek only forward-looking relief . . . .").); *Attwood v. Clemons*, 818 F. App'x 863, 868 (11th Cir. 2020) (discussing injunctive and declaratory relief and noting that "[a]n injunction is necessarily prospective").

Defendants also argue that they lack any responsibility to enforce the relevant state statute, and therefore that the *Ex parte Young* fiction cannot pierce their immunity.  (*See, e.g.*, Doc. # 23, at 3 (arguing that Plaintiffs "have not demonstrated that Taylor has any duty to enforce the challenged municipal incorporation of state

---

contrary to some of Defendants' briefing, the *Ex parte Young* exception does not require evidence of past wrongdoing.  *See, e.g.*, *Muscogee (Creek) Nation v. Poarch Band of Creek Indians*, No. 2:12CV1079-MHT, 2021 WL 961743, at *5 (M.D. Ala. Mar. 15, 2021) (Thompson, J.).  Even so, Defendants have acknowledged "past enforcement" of at least one of the challenged statutes.  (*See* Doc. # 48, at 8–9.)

laws").).   Indeed, "[o]nly if a state officer has the authority to enforce an unconstitutional act in the name of the state can the Supremacy Clause be invoked to strip the officer of his official or representative character and subject him to the individual consequences of his conduct."   *Summit Med. Assocs., P.C.*, 180 F.3d at 1341.   But Taylor and Cunningham apparently do have the authority to enforce the State statutes that are challenged in this lawsuit; in fact, they seemingly acknowledge as much, noting that they "generally do[] not enforce the Challenged Statutes" but never arguing that they *cannot* do so.   (Doc. # 48-1, at 3.)   "Do not" does not equate with "cannot."   Their authority, at this stage and for the purposes of the *Ex parte Young* inquiry, suffices.   *Cf. Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir. 1988) (holding that a governor was an "appropriate part[y]" to sue where the governor was responsible for law enforcement, was charged with executing the laws, and had residual power to commence criminal prosecutions).   The *Ex parte Young* exception dooms defendants' sovereign-immunity claims.

### 5.  Failure to State a Claim

Finally, Defendant Cunningham asserts that Plaintiffs have "fail[ed] to plausibly allege a threat of future enforcement," and he therefore asserts that the complaint falls short of the requirements of Rule 12(b)(6).   (Doc. # 26, at 6.) Defendant Cunningham's argument is linked to his discussion of the *Ex parte Young*

exception, obscuring its precise meaning.  (*See* Doc. # 26, at 7–8.)  To the extent that it is meant to stand on its own, however, it fails.

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.*, 550 U.S. at 570.  To meet this standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Here, the facts alleged comprise a plausible claim for relief.  It is plausible that Plaintiffs have been deprived of their First Amendment rights by the Solicitation and Begging Statutes, which criminalize panhandling and arguably form unconstitutional restrictions on protected speech.  *See, e.g.*, *Smith*, 177 F.3d at 956 ("Like other charitable solicitation, begging is speech entitled to First Amendment protection.").  As the Supreme Court recently reiterated, "[c]ontent-based laws— those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).  Further, the Court has explained, "a speech regulation is content based if the law applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 171.  The Statutes at issue here are plausible

examples of content-based restrictions on expression:  They prohibit speech based upon the subject matter discussed or viewpoint set forth.  Moreover, it is at least plausible that the Statutes will not withstand strict scrutiny.  *See generally id.*[15]

Accordingly, accepting Plaintiffs' allegations as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construing the complaint in Plaintiffs' favor, *see Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993), the court concludes that Plaintiffs have met the requirements for overcoming Defendants' Rule 12(b)(6) motion.  Because Plaintiffs have alleged a plausible First Amendment claim, a Rule 12(b)(6) dismissal is inappropriate.

## V.    CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motions to Dismiss (Docs. # 22, # 25) are DENIED.

DONE this 25th day of August, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[15] Plaintiffs also raise several additional arguments for the unconstitutionality of the Statutes, including that they are unconstitutional prior restraints on speech.  (*See, e.g.*, Doc. # 4, at 14.)  These alternative arguments need not be considered at this time.  Similarly, the court also will not consider the arguments for the Statutes' constitutionality, raised in passing in a reply brief by Defendant Taylor.  (*See* Doc. # 36, at 10, 11.)  *Cf. Hope For Families & Cmty. Serv., Inc. v. Warren*, 721 F. Supp. 2d 1079, 1190 n.121 (M.D. Ala. 2010) (Watkins, J.) ("This argument . . . will not be addressed because it was raised for the first time in the reply brief, and Plaintiffs have not had an opportunity to respond to the argument.").